[No. B058745. Second Dist., Div. Seven. Mar. 13, 1992.]

WAYNE A. PRATALI, Plaintiff and Respondent, v.
DOLLIE GATES, as Administratrix, etc., Defendant and Appellant.

COUNSEL

Patrick Talbot Hall for Defendant and Appellant.

Robert E. Guilford for Plaintiff and Respondent.

OPINION

**JOHNSON, J.**—Appellant, Elgin T. Gates, by and through his special representative, Dollie Gates, appeals from an adverse judgment entered in an action on a prior judgment in favor of respondent, Wayne A. Pratali. We affirm.

FACTS AND PROCEEDINGS BELOW

The underlying action in the case at bar was submitted to the trial court on trial briefs and an agreed statement of stipulated facts. The agreed facts, in essence, are as follows:

In 1967, appellant Elgin T. Gates executed a promissory note in the principal sum of $16,500 in Las Vegas, Nevada, payable to respondent in San Francisco, California. When the note was not paid on the due date, respondent filed an action on the note.

On November 16, 1976, respondent received a judgment against appellant Elgin T. Gates in the amount of $23,417.44 which included the principal amount of the note, attorney fees, costs and interest.[1]

After entry of judgment, but prior to 1980, appellant moved his domicile to Idaho where he resided until his death in 1988.

In 1980 respondent sent appellant a notice of recording of a sister state judgment in Idaho. In 1986, counsel for respondent wrote appellant a letter demanding payment on the judgment.

In 1987, respondent filed an application to renew the San Francisco judgment. This application was denied as untimely. Respondent filed a motion for relief from default alleging the slight delay was due to a calendaring error of counsel. Respondent's motion was denied on the basis

---

[1] In March 1977 respondent received another judgment for attorney fees and costs. The action on the judgment involved in this appeal concerns both judgments. For simplicity, we will refer to the 1976 judgment only throughout this opinion.

the statutory period for renewal of judgments ran after 10 years. The statute providing for renewal of judgments is strictly construed and expressly rejects any extension of time because of tolling or equitable relief. The decision to deny relief was upheld by the First Appellate District in an unpublished opinion.

In September 1988, respondent filed a separate action on the judgment of 1976.

In November 1988, Elgin T. Gates died. Appellant Dollie Gates was appointed special administratrix of the estate of Elgin T. Gates and was substituted in the present action as party defendant.

Appellant attempted to unilaterally include additional facts in her trial brief. Counsel stated appellant's son told him Gates used the money respondent lent him in 1976 to build residential units in Utah. The trial court sustained respondent's objection to appellant's attempt to augment the agreed statement of facts.

The trial court entered judgment for respondent. Appellant moved for new trial based on errors of law. The motion was denied and this appeal followed.

## DISCUSSION

### I. THE STATUTORY PROVISIONS GOVERNING ENFORCEMENT OF A JUDGMENT ARE INAPPLICABLE TO SEPARATE ACTIONS ON A PRIOR JUDGMENT.

The Enforcement of Judgments Law, enacted in 1982 (Code Civ. Proc., § 680.010 et seq.) provides the enforcement of a judgment may be extended by renewal of the judgment "at any time before the expiration of the 10-year period of enforceability. . . ."[2] (§§ 683.130, 683.020.) The Law Revision Commission Comment to section 683.020, which defines the period of enforceability, states:[3] "Unless the judgment is renewed [by an action on the judgment or by extension of a renewed judgment] a judgment is

---

[2] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[3] Section 683.020 provides:

"Except as otherwise provided by statute, upon the expiration of 10 years after the date of entry of a money judgment or a judgment for possession or sale of property:

"(a)   The judgment may not be enforced.

"(b)   All enforcement procedures pursuant to the judgment or to a writ or order issued pursuant to the judgment shall cease.

"(c)   Any lien created by an enforcement procedure pursuant to the judgment is extinguished."

enforceable only for 10 years; at the end of this period, enforcement of the judgment is barred and any liens created by the enforcement process are extinguished. No further action, including levy, sale, collection, or delivery pursuant to the judgment, or pursuant to a writ or order issued to enforce the judgment, may take place. . . . [¶] Unlike former Section 681, the 10-year period provided by Section 683.020 is not extended because enforcement of the judgment has been stayed or enjoined by court order or by operation of law. Nor is the 10-year period tolled for any reason. . . . The judgment creditor may also be able to bring an action on the judgment after the 10-year enforcement period of this section has expired if the statute of limitations provided by Section 337.5 [10 years] has not yet run." (16 Cal. Law Revision Com. Rep. (1982) p. 1207.)

Based on this section and others, appellant contends the action on the judgment was barred because: 1) respondent failed to renew the 1976 judgment within the prescribed 10-year period; 2) the 10-year period within which to renew the 1976 judgment cannot be tolled for any reason under the statute; 3) the tolling provision in section 351 applicable when defendants are outside the state is inapplicable to renewal of judgments as the statute expressly prohibits any tolling of the statute of limitations; and 4) respondent failed to file an action on the judgment within the 10-year period prescribed by section 337.5 for actions on judgments.

Each of appellant's contentions is correct. However, they are misdirected as they ignore the true factual circumstances of this case. In this action, respondent did not attempt to *renew* the 1976 judgment. He previously tried to renew the judgment after the 10-year period for renewal of judgments expired and his application was rejected as untimely. Rather, respondent brought a *separate, independent action* on the 1976 judgment. The treatment of an *action on a judgment* is distinguishable from the treatment of an application to *renew* the prior judgment.

A separate action on the judgment is expressly authorized in section 683.050 which states: "Nothing in this chapter limits any right the judgment creditor may have to bring an action on a judgment, but any such action shall be commenced within the period prescribed by Section 337.5." Thus, this section expresses the legislative determination in enacting the Enforcement of Judgments Law. The lawmakers did not intend the provisions to renew a judgment every 10 years to replace the then sole existing method of bringing an action on a judgment to retain the enforceability of a judgment. According to the Legislative Council's Digest, the Enforcement of Judgments Law "would provide for multiple renewals of the 10-year period by filing an application therefor, as specified, *as an alternative* to extending the 10-year

period by bringing an action upon the judgment." (Italics Added.) (Legis. Counsel's Dig., Assem. Bill No. 707, 6 Stats. 1982 (Reg. Sess.) Summary Dig., p. 490)

Thus, this alternate method to extend the life of a judgment was expressly authorized by statute and is proper in this case if the action on the judgment was filed within the 10-year period of limitations prescribed in section 337.5.

■■■ Appellant correctly points out more than 10 years elapsed between the time the 1976 judgment became final and the time respondent filed this action on the 1976 judgment. She thus contends this action is barred by the 10-year statute of limitations in section 337.5. Respondent counters by arguing the 10-year limitations period was tolled during the time appellant was out of state. (§ 351.)[4]

A review of the pertinent statutory provisions and explanatory comments of the Law Revision Commission reveals respondent is correct and appellant's position cannot be sustained.

The Law Revision Commission Comment to section 683.050, authorizing separate actions on judgments, states this section "makes clear that the 10-year period of enforcement prescribed by Section 683.020 and the renewal procedure . . . do not affect the right to bring an action on a judgment. The limitation period for commencing the action is prescribed by Section 337.5. The 10-year period provided by Section 683.020 and the 10-year statute of limitations provided by Section 337.5 *are not coterminous.* The period prescribed in Section 683.020 commences on the date of entry and is not tolled for any reason. The statute of limitations commences to run when the judgment is final [citation] and *may be tolled such as by the debtor's absence from the state* (see Section 351). . . ." (16 Cal. Law Revision Com. Rep. (1982) p. 1210), italics added.)

In the case at bar, the judgment sued upon was rendered in 1976. The action on this judgment—as distinct from an application to renew the judgment—was filed in 1988, approximately two years beyond the 10-year period of limitations. However, the 10-year statute of limitations was tolled under section 351 sometime before 1980 when appellant left California. Because appellant never returned to California, the period of limitations

---

[4]Section 351 provides:

"If, when the cause of action accrues against a person, he is out of the State, the action may be commenced within the term herein limited, after his return to the State, and if, after the cause of action accrues, he departs from the State, the time of his absence is not part of the time limited for the commencement of the action."

remained tolled up to the time of the filing of this action on the 1976 judgment.

██ ██ As a consequence, this action was not barred by either the Enforcement of Judgments Law (§ 680.010 et seq.) nor by the 10-year statute of limitations for actions on judgments (§ 337.5).

## II. SECTION 351 DOES NOT VIOLATE APPELLANT'S RIGHT TO EQUAL PROTECTION OF THE LAWS, AS APPLIED IN THE FACTUAL CIRCUMSTANCES OF THIS CASE OR OTHERWISE.

██ Appellant contends the tolling provision in section 351 penalizes her for exercising the right to travel and relocate to another state. Appellant thus asserts the statute must be tested by the "strict scrutiny" standard. She contends the statute must be narrowly drawn to serve a compelling state interest to withstand constitutional attack because the right to travel is a fundamental right under the federal Constitution. (See generally, *Shapiro* v. *Thompson* (1969) 394 U.S. 618, 631 [22 L.Ed.2d 600, 613, 89 S.Ct. 1322]; *Memorial Hospital* v. *Maricopa County* (1974) 415 U.S. 250, 254 [39 L.Ed.2d 306, 312, 94 S.Ct. 1076].) Appellant further contends under this standard the statute is unconstitutional as applied because the asserted purpose of alleviating the difficulties of finding and serving an absent defendant outside the state's borders evaporates once a plaintiff is in fact successful in locating an absent defendant.[5]

Our Supreme Court rejected a similar attack on section 351 on the basis the tolling provision impinged the defendant's right to travel in *Dew* v. *Appleberry* (1979) 23 Cal.3d 630 [153 Cal.Rptr. 219, 591 P.2d 509]. Our high court found the statute did not impinge on the right to travel because 1) it did not distinguish between resident absent defendants and nonresident absent defendants, and 2) the tolling provision exacted no greater penalty on absent defendants, but operated to merely postpone an action. Because no fundamental interest was infringed upon by the statute's tolling provision, the court held the proper standard applicable to test the validity of the statute as applied to that case was the rational basis standard.

---

[5]Appellant attempts to distinguish this case from all other decisions upholding section 351 and similar statutes against equal protection challenges. She claims all other decisions were facial attacks on the statute whereas she contends the tolling provision is unconstitutional as applied to her because the rationale supporting the constitutionality of the statute was eliminated once she was actually found and served while out of state.

The illogic of this argument is patently obvious. Clearly every defendant involved in the cases analyzing the constitutionality of a tolling provision for absent defendants was found and served. In other words, but for plaintiff's success in locating the absent defendant out of state, there would not have been a lawsuit, nor an appeal, nor an appellate decision holding the statute constitutional. Properly read, these decisions were as much "as applied" as they were "facial" challenges to the constitutionality of the statutes. (See *post*.)

In *Dew* v. *Appleberry, supra,* 23 Cal.3d 630, section 351 tolled the statute of limitations for the one month defendant spent in Ohio visiting relatives and the five days he spent in Oregon visiting friends. The defendant argued the tolling provision should not apply to him because during the entire statutory period he maintained the same business and residence addresses as at the time of the accident and could have been easily located and served.

In rejecting defendant's claim, the court stated: "Finally, contrary to defendant's suggestion, section 351 does not unconstitutionally infringe upon defendant's right to travel freely. In *Scherling* v. *Superior Court* (1978) 22 Cal.3d 493 [149 Cal.Rptr. 597, 585 P.2d 219], we rejected an identical attack upon Penal Code section 802, which commands that if a criminal defendant is out of state when or after an offense is committed, the time during which he is absent is not to be computed as part of the limitations period. As we held, 'The Legislature could have rationally determined that the likelihood of detection of the crime and identification of the criminal is greater if the accused remains within the jurisdiction, and that because the result—even if not the intent—of his departure from the state is to render discovery of the crime or the criminal more difficult, the statute of limitations should be tolled during his absence.' (22 Cal.3d at p. 500 [defendant argued tolling provision should not be applied to him because his motives for leaving the state were unrelated to any attempt to escape detection].) Inasmuch as we found that the statute effected no substantial impairment of the defendant's right to travel—'defendant is not subjected to greater penalty because he left the state; rather, he is faced with a tolled statutory period of limitations'—we held that the provision did not violate defendant's right to travel. (*Id.* at p. 502.)

"As we have explained above, section 351 likewise rationally alleviates any hardship that would result by compelling plaintiff to pursue defendant out of state. Since the statute does not penalize the exercise of a fundamental constitutional right, and in view of the statute's rational relation to a valid governmental interest, we reject defendant's claim that section 351 violates his right to travel." (*Dew* v. *Appleberry, supra,* 23 Cal.3d at pp. 636-637.)

A few years later, the United States Supreme Court reviewed the constitutionality of New Jersey's virtually identical tolling provision for absent defendants in *G. D. Searle & Co.* v. *Cohn* (1982) 455 U.S. 404 [71 L.Ed.2d 250, 102 S.Ct. 1137]. In that case the defendant argued the statute of limitations should not be tolled for periods of a defendant's absence from the state because defendants were readily amenable to service through the New Jersey long-arm statute. Therefore, the defendant argued, with New Jersey's adoption of a long-arm statute to acquire *in personam* jurisdiction over

out-of-state defendants, the rationale for the preexisting tolling provision ceased to exist.

The Supreme Court rejected the general challenge to the statute as a violation of equal protection. It noted there was no "fundamental right" to a statute of limitations as such statutes were a matter of " 'legislative grace' " subject to a " 'relatively large degree of legislative control.' " (*Id.* at p. 408 [71 L.Ed.2d at p. 256]; citing *Chase Securities Corp.* v. *Donaldson* (1945) 325 U.S. 304, 314 [89 L.Ed. 1628, 1636, 65 S.Ct. 1137].)

The court then examined the tolling provision as applied in that case. "When the statute is examined under the Equal Protection Clause, it survives petitioner's constitutional challenge because rational reasons support tolling the limitation period for unrepresented foreign corporations despite the institution of long-arm jurisdiction in New Jersey. First, the unrepresented foreign corporation remains potentially difficult to locate. Long-arm jurisdiction does not alleviate this problem, since a New Jersey plaintiff must find the unrepresented foreign corporation before it can be served. [Citation.] It is true, of course, that respondents had little or no trouble locating this particular, well-known defendant-petitioner, but the tolling provision is premised on a reasonable assumption that unrepresented foreign corporations, as a general rule, may not be so easy to find and serve. [Citation.] . . . [¶] In sum, because of the burdens connected with serving unrepresented foreign corporations, we agree with the Court of Appeals and the New Jersey Supreme Court that the tolling provision does not deprive an unrepresented foreign corporation of the equal protection of the laws. See *Dew* v. *Appleberry*, 23 Cal.3d 630, 591 P. 2d 509 (1979) (holding similar tolling provision rationally related to a valid governmental interest); . . ." (455 U.S. at pp. 410-412 [71 L.Ed.2d at pp. 257-258], fn. deleted; see also *Kohan* v. *Cohan* (1988) 204 Cal.App.3d 915 [251 Cal.Rptr. 570] [rejecting defendant's equal protection challenge to § 351 as applied to a cause of action arising in a foreign country between citizens of that country in apparent contradiction to the express language of the statute governing defendants who "leave" the state].)

Thus, on the basis of these authorities, it is apparent section 351 is neither unconstitutionally invalid on its face nor as applied to the facts in the case at bar. The statute as written is facially neutral. It makes no distinction between residents and nonresidents for purposes of tolling. The purpose of the statute was not vitiated once respondent in fact found and served appellant out of state. The purpose is to ease the burden—however small—of locating and serving out-of-state defendants. At the very least a plaintiff would have to demonstrate a defendant has the minimum contacts with the state to be

able to use the state's long-arm statute without violating due process. (See *International Shoe Co.* v. *Washington* (1945) 326 U.S. 310 [90 L.Ed. 95, 66 S.Ct. 154, 161 A.L.R. 1057].) Thus, even if a plaintiff is finally successful in serving a defendant, he or she might have expended a great deal of time, money and energy in so doing. Although appellant was not particularly difficult to locate in this instance, neither was the huge pharmaceutical firm in *G.D. Searle* v. *Cohn, supra*, whose equal protection challenge was rejected.

To accept appellant's argument we would have to hold a plaintiff loses the benefit of the tolling provision for absent defendants once a defendant is actually located regardless how much time, expense, and effort it required to find him or her. Punishing a plaintiff for his or her diligence in actually locating an out-of-state defendant would be counterintuitive and contrary to good public policy. We, therefore, expressly decline to adopt this position.

In sum, section 351 does not violate equal protection as applied to this case because it reasonably compensates for whatever burdens were associated with serving appellant in Idaho.

III. As Applied in This Case, Section 351 Does Not Violate the Commerce Clause.

■ Appellant's next contention is section 351 violates the commerce clause. In support of her position, appellant relies on *Bendix Autolite Corp.* v. *Midwesco Enterprises, Inc.* (1988) 486 U.S. 888 [100 L.Ed.2d 896, 108 S.Ct. 2218]. In that case the United States Supreme Court found an Ohio law tolling the limitations period as to foreign corporations, which did not otherwise consent to general jurisdiction of that state by appointing an agent for service of process, to unreasonably burden interstate commerce in violation of the commerce clause. The high court found "The State may not condition the exercise of the defense on the waiver or relinquishment of rights that the foreign corporation would otherwise retain. . . . [¶] It is true that serving foreign corporate defendants may be more arduous than serving domestic corporations or foreign corporations with a designated agent for service, and we have held for Equal Protection purposes that a State rationally may make adjustments for this difference by curtailing limitations protection for absent foreign corporations. [Citation.] Nevertheless, State interests that are legitimate for equal protection or due process purposes may be insufficient to withstand Commerce Clause Scrutiny. . . . [¶] The Ohio statute of limitations is tolled only for those foreign corporations that do not subject themselves to the general jurisdiction of Ohio courts. In this manner the Ohio statute imposes a greater burden on out-of-state companies than it

does on Ohio companies, subjecting the activities of foreign and domestic corporations to inconsistent regulations. [Citation.]" (*Bendix Autolite Corp.* v. *Midwesco Enterprises, Inc.*, *supra*, 486 U.S. 888, 893-894 [100 L.Ed.2d 896]; see also *Abramson* v. *Brownstein* (9th Cir. 1990) 897 F.2d 389 [§ 351 found violative of commerce clause as applied to out-of-state defendant engaged in selling gold coins and currency nationwide].)

Thus, while section 351's tolling provision may violate the commerce clause as applied to a defendant engaged in interstate commerce, there is no showing the statute violates the commerce clause when applied to a non-commercial defendant not engaged in interstate commerce. (See, e.g., *Kohan* v. *Cohan*, *supra*, 204 Cal.App.3d 915, 924 ["The *Bendix* case does not aid defendants. That acts giving rise to the causes of action herein occurred in Iran while defendants were residents of that country does not affect either interstate commerce or commerce between the United States and Iran, nor does it establish that defendants were engaged in interstate commerce by any definition of that term. . . ."]; *Mounts* v. *Uyeda* (1991) 227 Cal.App.3d 111, 122 [277 Cal.Rptr. 730] ["As *Bendix* enunciated, it is under that particular confluence of facts that the statute's constitutionality must be analyzed. [Citation.] In the instant case, both parties are local residents, and the alleged injury did not involve interstate commerce. Under such circumstances there is no interaction between Code of Civil Procedure section 351 and the commerce clause, and hence no conflict between them. Absent such a conflict, there is no constitutional infirmity to the application of Code of Civil Procedure section 351 here."].)

Similarly in this case, there are insufficient circumstances impacting on interstate commerce to invoke the commerce clause. It is true the loan was made in Nevada and was payable in California. However, there is no evidence respondent was in the business of making loans or was otherwise engaged in commerce. Although appellant would have us believe the loan proceeds were used in a commercial venture in another state, there is no competent evidence in the record to substantiate this assertion. Nor does this assertion of fact appear in the agreed statement of facts stipulated to by the parties. In any event, we question whether a single amicable loan between California acquaintances while visiting in Las Vegas can rise to the level of interstate commerce within the meaning of the commerce clause—however the proceeds are used. (See *Atlanta Motel* v. *United States* (1964) 379 U.S. 241, 253-258 [13 L.Ed.2d 258, 266-269, 85 S.Ct. 348].) Consequently, we reject appellant's attempt to characterize the transaction as interstate commerce and find, under the particular circumstances in this case, application of the tolling provision of section 351 does not violate the commerce clause.

## IV. THE EQUITABLE DOCTRINE OF LACHES IS NOT AVAILABLE AS A DEFENSE IN AN ACTION AT LAW.

█ Appellant's final argument is the equitable doctrine of laches should bar respondent's action on the judgment. She contends a delay of nearly 12 years in enforcing the judgment is unreasonable. She further contends her defense to the action has been hampered by the death of her husband during the pendency of the suit, and her case has been prejudiced as he was the sole witness to the execution of the underlying promissory note which gave rise to the judgment.

█ "A defendant asserting laches on plaintiff's part must show that plaintiff has acquiesced in defendant's wrongful acts and has unduly delayed seeking equitable relief to the prejudice of defendant. '[M]ere lapse of time, other than that prescribed by [statutes of limitations], does not bar relief.' (*Maguire* v. *Hibernia Sav. & Loan Soc., supra,* 23 Cal.2d 719, 736 [146 P.2d 673, 151 A.L.R. 1062]." (*Gerhard* v. *Stephens* (1968) 68 Cal.2d 864, 904 [69 Cal.Rptr. 612, 442 P.2d 692.])

█ Initially we note, the record reflects respondent sought a writ of execution to collect on the judgment in 1977. The writ was returned "wholly unsatisfied." At the hearing on respondent's motion for relief from default for his untimely filing of the application to renew the judgment, counsel for respondent explained during this entire period the judgment was "virtually uncollectible." Counsel also stated an attempt to get a levy in Idaho was also unsuccessful. In the agreed statement of facts the parties acknowledge respondent filed a sister state judgment in Idaho and notified appellant of this filing. They also agree letters from counsel for respondent demanding payment went unheeded. Under these circumstances, appellant has failed to prove in what way respondent unreasonably delayed in collecting the 1976 judgment.

Nor is it apparent how appellant was prejudiced by the delay. █ The death of a key witness in other circumstances may in fact constitute prejudice. (See, e.g., *Gerhard* v. *Stephens, supra,* 68 Cal.2d 864 [death of crucial witness one factor in finding prejudice].) █ However, in this case, the need for testimony from any witness is de minimis. In an action on the judgment, the only relevant question is whether the judgment has been satisfied or remains unpaid. Testimony concerning the circumstances surrounding the making of the original promissory note would be superfluous if not totally irrelevant. Moreover, we note the delay in collecting the judgment allowed appellant to benefit from retention of those funds during the 12-year period. Thus, it is not apparent to this court in what way appellant was damaged either legally or economically.

■ Even were the elements of laches satisfied it would not be available as a defense in this case in any event. The equitable defense of laches does not apply in an action at law. (*Brownrigg* v. *DeFrees* (1925) 196 Cal. 534, 539 [238 P. 714] [" 'It is scarcely necessary to say that complainants cannot avail themselves as a matter of law of the laches of the plaintiff in an ejectment suit. Though a good defense in equity, laches is no defense at law.' "]; *Bagdasarian* v. *Gragnon* (1948) 31 Cal.2d 744, 752 [192 P.2d 935] ["In any event it is clear that respondents are not barred by any delay upon their part because the cross-complaint, which was filed well within the statutory period of limitations, was for damages and presented a cause of action at law and not in equity; accordingly, the defense of laches was not available."]; *United States Capital Corp.* v. *Nickelberry* (1981) 120 Cal.App.3d 864, 867 [174 Cal.Rptr. 814] ["The defense of laches is not available in an action at law. An action based on a judgment is an action based on contract. The judgment becomes a debt which the judgment debtor is obligated to pay and the law implies a contract on his part to pay it."]; cf. *Velmohos* v. *Maren Engineering Corp.* (1980) 83 N.J. 282 [416 A.2d 372, 378, fn. 10] [dictum stating laches may be a viable defense to an unreasonably delayed action on a judgment].)

Thus, whatever the logic of allowing a defense of laches in an action on a judgment, this state's highest court has determined the equitable defense of laches is not available in an action at law. We are bound by that determination. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) Because an action on a judgment is an action at law, the equitable defense of laches is not available as a matter of law. Consequently, the trial court did not err in refusing to allow appellant to assert this defense to the action.

## DISPOSITION

The judgment is affirmed. Respondent to recover his costs on appeal.

Lillie, P. J., and Woods (Fred), J., concurred.