Filed 2/10/15  Mir v. Iungerich & Spackman CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JEHAN ZEB MIR,<br><br>      Plaintiff and Appellant,<br><br>v.<br><br>IUNGERICH & SPACKMAN,<br><br>      Defendant and Respondent. | B250393<br><br>(Los Angeles County<br>Super. Ct. No. BC212361)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

THE COURT:

The petition for modification or, in the alternative, rehearing is denied.  First, we did not remand the matter.  Second, as noted in the opinion, the issue of the correct spelling of the judgment debtor's middle name was not before us.  However, given that prior to May 31, 2013 the clerk of the trial court had entered an "amended" renewed judgment correcting the spelling of the judgment debtor's name to Jehan Zeb Mir, the operative May 31, 2013 judgment is against Jehan Zeb Mir.

It is ordered that the opinion filed herein on  January 29, 2015, be modified as follows:

On page one, in the caption, please delete "Jeb" and replace with "Zeb."

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JEHAN JEB MIR, | B250393 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC212361) |
| v. | |
| IUNGERICH & SPACKMAN, | |
| Defendant and Respondent. | |

APPEAL from the orders of the Superior Court of Los Angeles County, Elizabeth Allen White, Judge.  Affirmed in part, reversed in part.

Law Offices of Joseph R. Zamora and Joseph R. Zamora for Plaintiff and Appellant.

Iungerich & Spackman and Russell Iungerich for Defendant and Respondent.

Iungerich & Spackman, a Professional Law Corporation (Iungerich), obtained a money judgment against Jehan Zeb Mir (Mir) in 2003. In 2013, Iungerich renewed the judgment and Mir moved to vacate the renewed judgment. The trial court granted the motion in part and entered a renewed judgment in a reduced amount. Mir again moved to vacate the renewed judgment and the court denied the motion.

Mir now appeals from the order partially denying his first motion to vacate and the order denying his second motion to vacate. He argues that the judgment was untimely renewed and, in the alternative, the trial court erred in calculating the amount of the renewed judgment. He further argues that the court should have awarded him the attorney's fees he incurred in connection with his first motion to vacate.

We find no abuse of discretion in the court's decision to deny Mir's motion for attorney's fees. In addition, we conclude that the judgment was timely renewed and Mir did not meet his burden of showing that the court should have further reduced the amount of the renewed judgment. However, we strike the portion of the trial court's order denying the first motion to vacate to the extent the court ordered Iungerich to file another application for renewal of judgment that would take effect nunc pro tunc. We also reverse the court's order denying the second motion to vacate on the ground that court's entry of a *second* amended judgment was improper, as a renewed judgment had already been timely and properly entered.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The 2003 Judgment*

In 1992, Mir executed a retainer agreement hiring Iungerich to represent him in a lawsuit against a hospital.[1] When the hospital prevailed in that lawsuit, Mir refused to pay Iungerich its attorney's fees and instead filed a malpractice suit against Iungerich. Iungerich cross-complained for breach of contract based on its unpaid fees. The parties settled Mir's claims and proceeded to trial on the cross-complaint. Judgment in the amount of $100,897.06 was entered in Iungerich's favor on March 19, 2003.

---

[1] The retainer agreement was signed by Russell Iungerich, a Professional Law Corporation, which subsequently became Iungerich & Spackman.

2

2.     *Iungerich's Application to Renew Judgment and Mir's Motion to Vacate the Renewal*

On February 14, 2013, Iungerich filed an application for renewal of judgment in the amount of $438,594.16 and provided evidence that this amount represented the sum of the original judgment plus post-judgment costs and interest. Later that day, the superior court clerk entered renewal of judgment. On February 22, 2013, Iungerich served notice of renewal on Mir.

On March 21, 2013, Mir moved to vacate the renewed judgment.[2] Mir asserted five primary arguments in his moving papers, including that Iungerich had improperly credited a $45,000 payment from Mir to accrued post-judgment interest instead of applying the payment to the judgment principal. Mir also argued that Iungerich should have credited a $35,000 payment it had received from a third party in a separate action. In support of this argument, Mir submitted a declaration in which he stated that Iungerich had filed a "Fraudulent Conveyance Action" against Mir and the buyer of "property" sold by Mir, Iungerich had settled with the buyer for $35,000, and Mir had paid the settlement amount.[3] The case number and the date this action had settled were not provided by Mir in his declaration.

On May 31, 2013, the court granted the motion in part: the court held that Iungerich should have applied the $45,000 payment to reduce the principal amount of the judgment instead of the amount of accrued interest. As for Mir's request for a credit with respect to the $35,000 payment, the court denied the request. The court recalculated the amount of the judgment and entered "a renewal of the judgment . . . in

---

[2]     Approximately a week prior to the filing of the motion to vacate, Iungerich filed an "amended" application to renew the judgment in the same amount in order to correct an error in the spelling of Mir's name. The record does not indicate whether the clerk entered renewal of the judgment based on that amended application, but this is not an issue on appeal as Mir does not raise any challenge to the spelling of his name on the renewed judgment.

[3]     Mir also filed a declaration by the buyer two days before the hearing on the motion. The trial court declined to consider that evidence as being untimely filed, and Mir does not challenge that decision on appeal.

the amount of $408,610.60." At the hearing, the court asked Iungerich to prepare a "new judg[]ment . . . nunc pro tuncing [*sic*] the renewal of judg[]ment" to February 14, 2013. Iungerich provided notice of the court's ruling later that day. On June 13, 2013, Iungerich filed an "amended" application for renewal of judgment in the amount of $408,610.60 and the clerk entered the renewed judgment (Second Renewed Judgment).

### 3. *Mir's Motion for Attorney's Fees*

On June 6, 2013, Mir moved for an award of the attorney's fees he had incurred in connection with the motion to vacate the renewed judgment. He argued that he was entitled to such fees as the prevailing party on the motion because the parties' retainer agreement provided for the recovery of attorney's fees to "[t]he prevailing party in any action or proceeding to enforce any provision" of the retainer agreement. The court denied the motion on the ground that the fee provision in the retainer agreement did not apply to a prevailing party on *motions* but only to prevailing parties "in any action or proceeding," and here Iungerich was "the prevailing party in the underlying action to enforce the payment of attorney fees owed by . . . Mir."

### 4. *The Second Motion to Vacate Renewal of Judgment*

On June 24, 2013, after the clerk entered the Second Renewed Judgment in the reduced amount of $408,610.60, Mir again filed a motion to vacate the renewed judgment. Mir argued that the renewed judgment was not enforceable because the amended application to renew judgment was untimely filed after the ten year statute of limitations had expired. He further argued that the amount of the renewed judgment was incorrect because it did not provide a credit for the $35,000 settlement between Iungerich and the buyer in the fraudulent conveyance action. Mir asked the court to take judicial notice of the original complaint filed in the fraudulent conveyance action as well as a draft of the settlement agreement signed only by Iungerich.

The court denied the motion to vacate as an improper motion for reconsideration. The court also denied Mir's request for judicial notice on the ground that the subject documents were "unnecessary" to its decision.

4

*CONTENTIONS*

On appeal, Mir challenges three orders by the trial court: the court's order denying in part the first motion to vacate; the court's order denying the motion for attorney's fees; and the court's order denying the second motion to vacate and related request for judicial notice. Mir argues that (1) the court erred in denying the first motion to vacate with respect to the argument that the $35,000 settlement payment was a partial satisfaction of judgment, (2) the court erred in denying the motion for attorney's fees because he was entitled to those fees under the parties' retainer agreement and Civil Code section 1717; (3) the court erred in denying the second motion to vacate because Iungerich's application for the Second Renewed Judgment was untimely filed and improperly ordered to take effect nunc pro tunc; and (4) the court erred in denying his request for judicial notice.[4]

*DISCUSSION*

1.      *Renewal of Judgments*

A judgment creditor may renew a judgment by filing an application for renewal of the judgment at any time before the expiration of ten years after the judgment was entered. (Code of Civ. Proc., §§ 683.020, 683.130.) "[R]enewal does not create a new judgment or modify the present judgment. Renewal merely extends the enforceability of the judgment." (*Jonathan Neil & Associates, Inc. v. Jones* (2006) 138 Cal.App.4th 1481, 1489.)

"Renewal of a judgment is a ministerial act performed by a court clerk upon receipt of an application for renewal. [Citations.]" (*Fidelity Creditor Service, Inc. v. Browne* (2001) 89 Cal.App.4th 195, 198.) " 'Unless the judgment is

---

[4]      In passing, Mir also contends that the trial court improperly calculated the amount of post-judgment interest for three particular days: April 23, 2003, May 10, 2005, and June 13, 2006. However, Mir raised this argument for the first time in the reply he filed in support of his first motion to vacate. The trial court declined to consider this argument, and we conclude it did not abuse its discretion in doing so as " '[p]oints raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument.' [Citation.]" (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

5

renewed . . . a judgment is enforceable only for 10 years; at the end of this period, enforcement of the judgment is barred . . . . " (*Pratali v. Gates* (1992) 4 Cal.App.4th 632, 636-637.) Once a judgment is renewed, the judgment debtor has 30 days after service of the notice of renewal to move to vacate the renewal "on any ground that would be a defense to an action on the judgment, including the ground that the amount of the renewed judgment as entered [] is incorrect." (Code of Civ. Proc., § 683.170, subds. (a) & (b).) "The renewal of a judgment . . . shall be vacated if the application for renewal was filed within five years from the time the judgment was previously renewed under this article." (*Id.* at subd. (a).) If, upon hearing the motion, the court orders the renewal vacated, the court may enter "another and different renewal . . . in a different amount if the decision of the court is that the judgment creditor is entitled to renewal in a different amount." (*Id.* at subd. (c).)

"The judgment debtor bears the burden of proving, by a preponderance of the evidence, that he or she is entitled to relief under [Code of Civil Procedure] section 683.170. [Citations.] On appeal, we examine the evidence in a light most favorable to the order under review and the trial court's ruling for an abuse of discretion. [Citation.]" (*Fidelity Creditor Service, Inc. v. Browne*, *supra,* 89 Cal.App.4th at p. 199.)

    2.    *The Court Did Not Err in Declining to Offset the $35,000 Payment*

    Mir contends that the court erred in denying the first motion to vacate to the extent Mir requested a credit for the $35,000 payment Iungerich had received in the fraudulent conveyance action. However, Mir did not meet his burden as the moving party of proving that he was entitled to the requested relief. (See *Fidelity Creditor Service, Inc. v. Browne, supra,* 89 Cal.App.4th at p. 199.)

    Mir's evidence filed in support of the first motion to vacate consisted only of his declaration stating that Iungerich had filed a "[f]raudulent [c]onveyance" action against him and the buyer of Mir's "property," that the buyer had settled with Iungerich for $35,000, and that Mir had paid the settlement amount. Mir did not establish what causes of action had been asserted against the buyer in that lawsuit, what relief

6

Iungerich had sued the buyer for, what the terms of the settlement were, and whether the case had been dismissed. Therefore, it was not an abuse of discretion for the court to deny the requested relief because there was insufficient evidence that the subject settlement between Iungerich and the third party buyer was a partial satisfaction of Iungerich's judgment against Mir.

3. *The Judgment Was Timely Renewed*

Mir contends that Iungerich's application for the Second Renewed Judgment was untimely filed after the expiration of the ten-year statute of limitations and improperly ordered to take effect nunc pro tunc as of the date the initial application for renewal was filed. Accordingly, Mir argues that "there is no enforceable judgment in effect." Mir acknowledges that the court was authorized pursuant to Code of Civil Procedure section 683.170 to enter a new renewed judgment upon partially granting his motion to vacate; however, he contends that this renewed judgment was also invalid because it was entered after the expiration of the ten-year period provided for filing applications for renewal.

Mir is correct that the trial court's use of the nunc pro tunc procedure was improper; the nunc pro tunc procedure allows the trial court to correct clerical errors not, as here, to correct mistakes of the parties. (*Ames v. Paley* (2001) 89 Cal.App.4th 668, 672.) In addition, the court's entry of the Second Renewed Judgment was also improper because judgment had already been renewed on February 14, 2013, and a judgment creditor must wait five years after a judgment has been renewed before filing another application for renewal. (Code Civ. Proc., § 683.170, subd. (a).) On these grounds, the trial court should have granted the second motion to vacate.

However, Mir's argument that there is no longer an enforceable judgment is without merit. The judgment was timely renewed and the subsequent filing of a premature application to renew the judgment and entry of that requested renewed judgment nunc pro tunc did not invalidate the renewed judgment already in effect.

Iungerich's initial application for renewal of the judgment was timely filed on February 14, 2013 within ten years of the entry of the original judgment on March 19,

7

2003.[5] This extended the period of enforceability under Code of Civil Procedure section 683.120. The clerk entered renewal of the judgment pursuant to Iungerich's timely application, and then Mir filed a motion to vacate the renewed judgment. When the court granted that motion in part, the court entered a renewed judgment in a reduced amount in accordance with Mir's requested relief.

Code of Civil Procedure section 683.170 expressly authorizes the court when it grants a motion to vacate a renewal to enter "another and different renewal . . . in a different amount if the decision of the court is that the judgment creditor is entitled to renewal in a different amount." That is exactly what happened here. That the court recalculated the amount of the judgment and entered a renewed judgment based on that amount as it was expressly allowed to do pursuant to the Enforcement of Judgments Law (Code of Civ. Proc. § 680.010 et seq.) did not render the renewal untimely. The judgment had already been timely renewed pursuant to Iungerich's initial application for renewal within the ten-year period as required by Code of Civil Procedure section 683.020.

Furthermore, that the court then improperly ordered Iungerich to file a new application for renewal of judgment and then entered yet another renewed judgment pursuant to that application, did not invalidate the previous properly renewed judgment. The Second Renewed Judgment was null and void; it was barred by Code of Civil Procedure section 683.170. The operative renewed judgment remains the judgment entered by the court on May 31, 2013 when it partially granted the first motion to vacate and entered judgment in the reduced amount of $408,610.60.

4.    *The Court Properly Denied Mir's Motion for Attorney's Fees*

Mir contends that he was entitled to the attorney's fees he incurred in connection with his first motion to vacate because the parties' retainer agreement provided for attorney's fees to the prevailing party "in any action or proceeding to enforce any provision" of the agreement. Generally, "[a] judgment extinguishes all further

---

[5]    Iungerich's filing of a first "amended" application to renew judgment in order to correct a typo in Mir's middle name was also timely filed within the ten year period.

contractual rights, including the contractual attorney fees clause. [Citation.] Thus, in the absence of express *statutory* authorization . . . postjudgment attorney fees cannot be recovered. Fees authorized by statute do not present the same problem. A judgment does not act as a merger and a bar to statutory fees. [Citation.]" (*Berti v. Santa Barbara Beach Properties* (2006) 145 Cal.App.4th 70, 77 (italics added).)

Here, Mir argues that Civil Code section 1717 (section 1717) authorizes the recovery of the attorney's fees he incurred in filing his first motion to vacate.[6] Section 1717, subdivision (a) states in pertinent part: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

However, "section 1717 does not *create* a right to attorney's fees," but "[i]nstead, its sole purpose is to transform a contractually unilateral right to fees into a reciprocal right to fees . . . . [Citation.]" (*Chelios v. Kaye* (1990) 219 Cal.App.3d 75, 79 [abrogated by statute on other grounds].) Therefore, section 1717 did not provide the required "express statutory authorization" for the recovery of Mir's postjudgment attorney fees. (*Berti v. Santa Barbara Beach Properties, supra,* 145 Cal.App.4th at p. 77.) Furthermore, although Mir cites to the unusual holding in *Rainier National Bank v. Bodily* (1991) 232 Cal.App.3d 83 (*Rainier*) that the prevailing party in an action seeking to enforce a judgment *was* entitled to fees under section 1717, the facts in that case are inapposite.

In *Rainier,* a judgment creditor obtained a judgment in the State of Washington and then sought to domesticate the judgment in California. (*Rainier, supra,* 232 Cal.App.3d at p. 85.) The trial court ruled that the Washington judgment was

---

[6] Mir concedes that the Enforcement of Judgments Law only allows judgment creditors, not debtors, to recover attorney's fees incurred in enforcing the judgment. (See Code of Civil Procedure, § 685.040.)

9

invalid, vacating the judgment in its entirety. (*Id.* at p. 86.) The trial court also denied the judgment debtors' motion for attorney's fees, and the judgment debtors appealed from that order. (*Id.* at p. 85.) The court of appeal held that the judgment debtors' success in vacating the judgment in its entirety made them the prevailing parties in the underlying contract dispute, and "[t]o disallow attorney's fees in this factual situation would reward [the plaintiff] for selecting an improper forum and would be contrary to the logic and to the spirit of [] section 1717." (*Id.* at p. 86.)

Here, in contrast to *Rainier,* Mir did not succeed in vacating the entire judgment, but only prevailed to the extent that he persuaded the trial court to reduce the $438,594.16 judgment by approximately $30,000. In addition, Mir raised five primary arguments in his first motion to vacate and was only granted relief on one of them. The court's partial granting of his motion to vacate, therefore, did not make Mir the prevailing party on that motion; the underlying judgment remained valid and had only been reduced in small part. Furthermore, the attorney's fees provision in the parties' contract only provided for fees to the prevailing party "in any action or proceeding," and here Mir only achieved partial success on a motion and not in the entire action.

5.      *Mir Has Not Shown That He Was Prejudiced By the Court's Denial of His Request for Judicial Notice*

Mir contends that the court erred in denying his request for judicial notice filed in support of the second motion to vacate. The two documents of which Mir sought judicial notice were the original complaint filed in the fraudulent conveyance action and a draft of a settlement agreement in that action signed only by Iungerich. These documents were submitted to support Mir's argument that the $35,000 settlement payment in that action was a partial satisfaction of the judgment in this action.

On appeal, Mir only argues that the court erred in denying his *first* motion to vacate to the extent the court did not find that the $35,000 should be credited towards the judgment. He does not argue that the court, in considering the second motion to vacate, should have granted the requested $35,000 credit based on the new evidence submitted, namely, the complaint and settlement agreement. Accordingly, we need not

10

reach Mir's challenge to the court's denial of judicial notice as Mir has not shown that he was prejudiced by this ruling. (See *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 [the appellant bears the burden of affirmatively establishing error and demonstrating that it resulted in a miscarriage of justice].)

## *DISPOSITION*

We strike the portion of the trial court's order denying the first motion to vacate to the extent the court ordered Iungerich to file an amended application for renewal of judgment that would take effect nunc pro tunc. We reverse the court's order denying the second motion to vacate. The court's orders are otherwise affirmed and, as explained above, the entry of judgment in the amount of $408,610.60 on May 31, 2013 remains in effect for purposes of future enforcement. In light of the mixed results here, the parties shall bear their own costs on appeal. (Cal. Rules of Court, Rule 8.278(a)(5).)


## *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*


LAVIN, J.*

WE CONCUR:



KITCHING, Acting P. J.                    ALDRICH, J.


---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.