[Civ. No. 47373. Second Dist., Div. Five. Mar. 30, 1976.]

PHILIP KRAMER, Plaintiff and Appellant, v.
AUSTIN A. GADDIS, Defendant and Appellant.

838

**COUNSEL**

Sanford M. Ehrmann for Plaintiff and Appellant.

Rosen, Ross, Fields & Zax and Arnold L. Ross for Defendant and Appellant.

**OPINION**

**ASHBY, J.**—This is a personal injury action arising out of the crash of a private airplane piloted by defendant. After a jury verdict for defendant, the trial court granted plaintiff's motion for a new trial. Defendant appeals from the order granting a new trial. Plaintiff has filed a "protective cross appeal" from the judgment entered on the verdict (see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 349, p. 4324.)

On May 29, 1972, defendant piloted a Piper Cherokee 6 airplane from Santa Monica to Lake Elizabeth on a pleasure flight. Defendant had a private pilot's license and 275 hours' experience. Defendant had five other passengers, his wife and son, Reverend Wilbur Mansveld and his daughter, and plaintiff. Reverend Mansveld was himself an experienced pilot and a former military pilot instructor. He had a commercial pilot's license and 2,100 hours of experience. Although Reverend Mansveld was not acting as co-pilot, he was sitting in the co-pilot's seat, and he provided important testimony at trial. Defendant was at all times in command of the aircraft.

The crash occurred as defendant was attempting to land the plane at the Lake Elizabeth airstrip, an uncontrolled dirt runway 2,200 feet long. There were no weather or traffic conditions which interfered with the landing, and no apparent mechanical defects in the plane. Although defendant had never landed there before, he felt it unnecessary to fly over the strip prior to landing, since Reverend Mansveld had landed a less powerful plane there about a year before with no problem, and there was no substantial wind problem. As he approached for a landing, defendant selected an intended touchdown point of about 50 feet beyond the beginning of the runway. Although the aircraft required only 900 feet to land, and the airstrip was 2,200 feet long, defendant had been trained that it is best to land near the beginning of the runway, leaving extra room for emergencies such as brake failure.

As he got to within approximately 167 feet of the beginning of the runway, defendant observed that without a correction he would instead land much farther down the runway than intended, 700 to 1,000 feet. At that point the engine was in the idle position, and the speed of the aircraft was controlled by the attitude of the nose. Defendant raised the nose of the plane to slow it down and to land closer to the intended touchdown. Defendant testified:

"Q. How much of a correction did you make, Doctor? Do you know?

"A. Too much.

"THE COURT: When you say too much, you mean you brought the nose up too high?

"THE WITNESS: Enough to have broken my wife's back and my back, yes, sir."

The plane in fact touched down "[s]lightly before the runway" and came to a stop in a cloud of dust after traveling 150 feet more. Plaintiff and the other passengers were injured.

After the crash Reverend Mansveld got out and observed that the landing gear had struck a small bank at the end of the runway, 8 to 10 inches below the surface of the runway. The bank was difficult to observe from the air because the terrain was covered with tall grass.

Reverend Mansveld also testified that he had flown with defendant 10 to 15 times and had no question about defendant's competence as a pilot. When the plane came down he thought to himself that the landing was a little rough, but it was only when the plane came to a stop that he realized, to his surprise, that they had crashed. He did not observe defendant do anything abnormal, careless, or reckless during the landing. He observed nothing during the landing which required him to caution defendant. He did testify, however, that he would have done three things differently if he had been the pilot: He would have overflown the strip once before landing, he would have carried power into the landing, and he would have corrected a slight drift to the left.

Plaintiff testified that he felt defendant should have flown over the strip first because he had never landed there,[1] and that defendant must

---

[1]Plaintiff testified he told defendant prior to landing that "[w]e should fly over the field." Defendant testified he did not remember plaintiff's making such a statement.

have cut power too soon because the plane crashed before the intended spot.

After a jury verdict for defendant the court granted plaintiff's motion for a new trial. The order granting new trial provides as follows:

"All of the witnesses who testified in the trial and who were present aboard the aircraft at the time of the crash did not in any way indicate anything out of the ordinary or unusual about the approach of the aircraft to the runway. Defendant by his testimony indicated the length of the airstrip was more than adequate to accommodate the safe landing of the aircraft. There being no apparent reason for the crash, the Court inquired of the defendant 'What Happened?' and defendant stated to the Court 'I overreacted.' Such overreaction the Court finds constitutes negligence. The aircraft crashed 50 feet short of the runway. Court therefore grants motion for new trial on the grounds of insufficiency of evidence to justify the verdict."[2]

Defendant contends that the reasons specified in the trial court's order are without any substantial basis in the record, and that therefore the order should be reversed. (See Code Civ. Proc., § 657; *Mercer v. Perez,* 68 Cal.2d 104, 115 [65 Cal.Rptr. 315, 436 P.2d 315].) This contention is without merit. First, defendant contends that nowhere in the record did defendant testify "I overreacted" as stated in the trial court's order. While it is true that defendant did not use the specific word "overreacted," defendant did admit that he made "too much" of a correction, and in response to a question by the court he admitted that he brought the nose up too high. This testimony substantially supports the reason specified by the trial court, and it would be quibbling to reverse because the trial court failed to quote the language of the witness exactly. The trial court is not required to cite page and line of testimony in summarizing its reasons for finding the evidence insufficient. (*Scala v. Jerry Witt & Sons, Inc.,* 3 Cal.3d 359, 370 [90 Cal.Rptr. 592, 475 P.2d 864].)

---

[2]The last sentence was omitted from the minute order of March 20, 1975, granting the new trial. However, the next day, March 21, the court added this sentence by nunc pro tunc order, finding that through inadvertence and clerical error the minute order of March 20 did not properly reflect the ruling of the court. The nunc pro tunc order was timely. (See *Fry v. Young,* 267 Cal.App.2d 340, 347 [73 Cal.Rptr. 62].) The alleged fact that it was plaintiff's attorney who brought the error to the court's attention would not constitute an unlawful delegation of the court's duty to prepare the order, as prohibited by Code of Civil Procedure section 657.

Defendant similarly contends that the record does not support the trial court's statement that the plane landed "50 feet short of the runway." Again, although there appears to be no *testimony* placing the point of impact at exactly 50 feet short of the runway,[3] there is substantial support in the record for that conclusion, when the testimony is considered in conjunction with the photographs and diagrams which were admitted into evidence. Furthermore, the exact distance was not crucial to the court's ruling. It was undisputed that the plane touched down short of the runway, striking the embankment at a level below that of the runway.[4]

Defendant's second main contention is that the order granting new trial is legally insufficient because it fails to discuss the issue of proximate cause. This contention is without merit because it rests on a faulty premise and misplaces reliance on *Devine* v. *Murrieta,* 49 Cal.App.3d 855, 861-862 [122 Cal.Rptr. 847]. *Devine* was a medical malpractice action. The plaintiff's theory was that the defendant physician had failed to exercise due care in the manner in which he had plaintiff's Pap smear analyzed, and that had the test been properly performed plaintiff's malignant condition would have been discovered and successfully treated. The defense was described by the appellate court as follows: "The defense not only contested the charge of negligence, but also denied that the alleged misreading of the Pap smear was the proximate cause of any harm. In the defendant's view, there was no reasonable probability that a follow-up of the August 5, 1970, test would have revealed plaintiff's malignancy, which was discovered, instead, by a biopsy taken November 17, 1970. Defendant challenged, as speculative, the theory that a discovery of the plaintiff's condition in August would have benefitted [*sic*] her." (49 Cal.App.3d at p. 858.) After a jury verdict for defendant the trial court granted a new trial on the ground that the physician had failed to exercise the proper standard of care. The appellate court reversed because the order on its face failed to indicate that the trial court considered that the verdict could have been based upon a finding that defendant's alleged negligence had not harmed plaintiff, concluding, "Clearly, a verdict for the defendant cannot be set aside solely for the reason that defendant violated the

---

[3]Defendant mentioned 50 feet in his testimony as his intended touchdown spot on the runway.

[4]Defendants own testimony was that the plane came down "shortly" or "slightly" before the beginning of the runway. Reverend Mansveld testified the landing gear struck "at the very threshold" of the runway.

standard of care without any consideration of causation and harm to plaintiff." (*Id.,* at p. 861.)

Defendant erroneously assumes that the jury in this case could have based its verdict on lack of proximate cause rather than lack of negligence. He then argues that under *Devine* the order granting new trial was fatally defective. However, contrary to defendant's assumption, there is no way in this case the jury could reasonably have concluded that defendant was negligent but that his negligence was not a proximate cause of plaintiff's injuries. While it is true that defendant attempted to argue to the jury that the embankment was not clearly marked and was hard to distinguish because of tall grass, and that this was the fault of the airstrip owner and "the cause" of the accident, this argument lacked legal merit. The undisputed evidence showed that because defendant overcorrected, the plane missed the runway, striking the embankment at a point 8 to 10 inches *below* the surface of the runway. Even assuming that the presence of the embankment contributed to the accident, defendant's admitted overcorrection brought the plane down short of the runway and clearly constituted a proximate cause of plaintiff's injuries. ■ "The defendant's negligent act need not be the *sole cause* of the injury; it is enough that it be *a cause.* When the separate and distinct negligent acts of two persons are in substantially simultaneous operation, and contribute to cause the injury, 'each is and both are the proximate cause,' and the plaintiff may recover in full from either of the parties, or both." (4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 624, p. 2906; italics in original.) ■ Plaintiff's counsel properly pointed out to the jury that if defendant's negligence was one proximate cause of the injury they should find for the plaintiff. (See BAJI No. 3.77.) Thus, unlike *Devine,* proximate cause was not a real issue in this case, and there was no reason for the trial court to refer to it in the order granting a new trial.

Thus we conclude that the order granting a new trial is supported by substantial evidence and should be affirmed. The affirmance of that order leaves no final judgment in effect and renders moot plaintiff's protective cross-appeal from the judgment. Therefore, plaintiff's appeal should be dismissed, but he should recover costs. (*Freeman* v. *LaMorte,* 148 Cal.App.2d 670, 675 [307 P.2d 734]; *Kubowitz* v. *Canon,* 194 Cal.App.2d 378, 385 [14 Cal.Rptr. 824]; *Mehling* v. *Schield,* 253 Cal.App.2d 55, 61 [61 Cal.Rptr. 159].)

The order granting a new trial is affirmed. The appeal from the judgment is dismissed. Plaintiff shall recover his costs on both appeals.

Kaus, P. J., and Hastings, J., concurred.

The petition of the defendant and appellant for a hearing by the Supreme Court was denied May 26, 1976.