[No. B027586. Second Dist., Div. Seven. Sept. 21, 1988.]

KHANBABA KOHAN et al., Plaintiffs and Appellants, v.
NEDJATOLLAH F. COHAN et al., Defendants and Appellants.

**COUNSEL**

Kaye, Scholer, Fierman, Hays & Handler, Pierce O'Donnell, Cruz Reynoso, Betsy Handler and Morton Minikes for Plaintiffs and Appellants.

Coudert Brothers, Douglas L. Hallett, George M. Soneff and Craig H. Missakian for Defendants and Appellants.

## Opinion

**LILLIE, P. J.**—In an action for dissolution of partnership, an accounting and other relief, defendants appeal from an order granting plaintiffs' motion for new trial and plaintiffs cross-appeal from the judgment vacated pursuant to the order for new trial.

### Factual and Procedural Background

Plaintiffs, Khanbaba Kohan and Morteza Kohan, and defendant Nedjatollah Cohan are brothers and natives of Iran. In Iran the brothers transacted business together accumulating real and personal property held in the names of all three. In 1961 the brothers executed an agreement which recited that, in the past, the wealth accumulated by them had "been registered to everyone's name in a non-proportional ratio." In order "to clarify their financial situation," the agreement declared that all of the brothers' assets, in Iran or abroad, registered in the name of any one brother, or which any of them subsequently acquired, were to be divided among them in the following proportions: Nedjatollah, 35 percent; Khanbaba, 35 percent; Morteza, 30 percent. The agreement further provided that any asset acquired by one brother through his individual activities became part of the joint account of all of them. The agreement was to remain in force until "an official written settlement is drawn up evidencing the dividing of the joint belongings . . . ." Following their execution of the agreement the business of the brothers flourished and by the time of the Iranian revolution (1978-1979) they were among the wealthiest families in Iran. Because of the revolution all three brothers left Iran, arriving in California in 1979.

In 1981, in response to his request, Khanbaba received from Nedjatollah a statement of assets in the latter's possession. On July 29, 1982, Khanbaba and Morteza, apparently dissatisfied with this accounting, sued Nedjatollah in California for declaratory relief, dissolution of partnership, accounting, breach of contract, breach of fiduciary duty and injunctive relief. The second amended complaint[1] included the following allegations: In breach of the parties' 1961 agreement, defendant refused to dissolve the partnership and account for and divide the assets thereof and appropriated for himself alone assets standing in his name which he held in trust for plaintiffs; plaintiffs did not learn of defendant's repudiation of the partnership agreement and appropriation of partnership assets until a time within three years of the filing of the complaint.

---

[1] In addition to Nedjatollah the second amended complaint named as defendants Nedjatollah's wife and their children on the theory that the parents transferred to trusts for the children property belonging to the partnership.

Henceforth in this opinion "defendant" in the singular refers to defendant Nedjatollah.

Defendants moved for summary judgment on the ground the action is barred by the statute of limitations, arguing plaintiffs' causes of action accrued when defendant repudiated and withdrew from the partnership in 1976. In support of the motion defendant submitted letters which he sent to each of the plaintiffs (dated Feb. 19, 1976, and Mar. 2, 1976, respectively) which stated, "I declare and announce herewith that I am not ready to cooperate with you henceforth by any term and condition whatsoever," and demanded that all funds, documents, notes and commercial instruments in plaintiffs' possession belonging to defendant be returned to him. In his declaration in opposition to the motion plaintiff Khanbaba stated that after he received the letter from defendant the parties restored relations and thereafter continued to conduct the partnership business as they always had done. The motion for summary judgment was granted. The order granting the motion stated that the cause of action for an accounting—the fundamental cause of action in the complaint—accrued in 1976 when defendant repudiated the partnership agreement. The California statute of limitations, not that of Iran, is applicable in this case. The four-year statute of limitations (Code Civ. Proc., §§ 337, subd. 1, 343)[2] governs, was not tolled by section 351,[3] and bars this action. Summary judgment accordingly was entered in favor of defendants and against plaintiffs.

Plaintiffs moved for a new trial[4] on the grounds that section 351 applies to toll the statute of limitations until defendant's arrival in California and, in any event, there is a triable issue of fact as to whether or not defendant's repudiation of the partnership in 1976 later was nullified by acts and statements of the parties. The motion was granted on the first ground, i.e., section 351 is applicable in this case. The order granting the motion for new trial expressly vacated the summary judgment.

Defendants moved for reconsideration of the order granting a new trial. The court granted the motion but, upon reconsideration, reaffirmed its new trial order.

Defendants appeal from the order granting plaintiffs' motion for a new trial.[5] Plaintiffs cross-appeal from the summary judgment.

---

[2] All statutory references are to the Code of Civil Procedure.

[3] Section 351: "If, when the cause of action accrues against a person, he is out of the State, the action may be commenced within the term herein limited, after his return to the State, and if, after the cause of action accrues, he departs from the State, the time of his absence is not part of the time limited for the commencement of the action."

[4] Inasmuch as determination of a summary judgment motion involves the trial of an issue of law, a decision granting a motion for summary judgment may be challenged by a motion for new trial. (*Scott* v. *Farrar* (1983) 139 Cal.App.3d 462, 467 [188 Cal.Rptr. 823]; and see *Green* v. *Del-Camp Investments, Inc.* (1961) 193 Cal.App.2d 479, 481 [14 Cal.Rptr. 420].)

[5] An order granting a new trial is appealable. (§ 904.1, subd. (d).) Defendants appeal also from "the court's order denying their motion for reconsideration." Contrary to this charac-

## DISCUSSION

### I

### DEFENDANTS' APPEAL

 The first clause of section 351 provides that "[i]f, when the cause of action accrues against a person, he is out of the State, the action may be commenced within the term herein limited, after his return to the State . . . ." The second clause of the statute provides that "if, after the cause of action accrues, he departs from the State, the time of his absence is not part of the time limited for the commencement of the action." Defendants contend the word "return" in the first clause shows the intent of the Legislature that section 351 apply only where a person was present in California before a cause of action accrued against him, was absent from the state when the cause of action accrued, and thereafter returned to California. The use of the word "departs" in the second clause, defendants argue, further supports this interpretation of section 351.

In *Cvecich v. Giardino* (1940) 37 Cal.App.2d 394 [99 P.2d 573], an argument similar to that of defendants was rejected. There, in 1929 the defendant, a resident of New Jersey, executed in New Jersey a written bond wherein she agreed to pay to plaintiff, a resident of New York, a sum of money in 1932. This obligation was secured by real property in New Jersey and was payable in New York. The debt was not paid when due and prior liens on the real property were foreclosed rendering plaintiff's security valueless. In 1937 plaintiff commenced an action in California on the obligation and attached certain property of defendant in this state. Plaintiff was a resident of New York and defendant a resident of New Jersey; neither party was physically present in California at any time. Defendant appealed from judgment in favor of plaintiff contending the action was barred by the statute of limitations. Defendant argued that inasmuch as section 351 uses the word "return" to this state, it has no application to a nonresident defendant who, until she appeared in the present action, was never in California; such a defendant cannot "return" to a state she never entered. The court rejected the contention stating: "While it is true that normally the term 'return' carries with it the implication of coming back after having first been here, the term as used in statutes of limitations, and particularly in statutes of the nature of section 351, has quite uniformly been interpreted to mean that the section applies so as to toll the statute not only where the

---

terization of the order in the notice of appeal, the court granted defendants' motion for reconsideration but, upon reconsideration, adhered to its new trial order. We ignore defendants' purported appeal from a nonexistent order denying their motion for reconsideration.

defendant was once a resident of the state and leaves it and returns, but also where the defendant has never been in, or resided in, the state until the filing of the complaint. The term as used in statute of limitations has come to have this special meaning. The applicable principles, supported by authorities from many states (Texas alone being cited to the contrary), are stated as follows in 17 Ruling Case Law, page 837, section 199: 'According to the generally accepted doctrine, if the statute provides that the period of limitation shall not run in favor of a debtor who is absent from or out of the state, the saving clause extends to foreigners, or those who have never resided in the state, as well as to citizens who may be temporarily absent. Whether the defendant be a resident of the state, and only absent for a time, or whether he resides altogether out of the state, is immaterial. He is equally within the proviso. If the cause of action arose out of the state, it is sufficient to save the statute from running in favor of the party to be charged until he comes within its jurisdiction. . . .' " (*Cvecich* v. *Giardino, supra,* 37 Cal.App.2d at p. 399.)

Cases before and after *Cvecich* consistently have interpreted section 351 to toll the statute of limitations as to a cause of action against a defendant who was a nonresident of California when the cause of action accrued; in such case the statute commences to run only when the defendant enters the state. (*San Diego Realty Co.* v. *Hill* (1914) 168 Cal. 637, 639 [143 P. 1021]; *McCormick* v. *Marcy* (1913) 165 Cal. 386, 388-389 [132 P. 449]; *McKee* v. *Dodd* (1908) 152 Cal. 637, 639-640 [93 P. 854]; *Dougall* v. *Schulenberg* (1894) 101 Cal. 154, 157 [35 P. 635]; *Lewis* v. *Superior Court* (1985) 175 Cal.App.3d 366, 373 [220 Cal.Rptr. 594]; *State Medical Education Bd.* v. *Roberson* (1970) 6 Cal.App.3d 493, 501 [86 Cal.Rptr. 258]; *State National Bank* v. *Kerfoot* (1919) 41 Cal.App. 198, 200 [182 P. 320]; *Chappell* v. *Thompson* (1913) 21 Cal.App. 136, 137-138 [131 P. 82].) "The California tolling statute is not expressly limited in its coverage, and the California courts, like those in most other states with similar statutes, have refused to limit its application. The fact that the statute speaks of defendant's 'return to the state' has been held not to restrict its coverage where the defendant is a non-resident and has not been in California previously; the statute has been held to apply to a foreign cause of action between non-residents." (Note, *Limitation of Actions: Absence of the Defendant: Tolling the Statute of Limitations on a Foreign Cause of Action* (1954) 1 UCLA L.Rev. 619, 620, fns. omitted; see also Annot., Statute of Limitations—Nonresident (1951) 17 A.L.R.2d 502, 506-513.)

Defendants attempt by various arguments to undermine the overwhelming authority rejecting their interpretation of section 351. None of these attempts succeeds.

Citing two cases from other jurisdictions which hold that under tolling provisions similar to section 351 where a debt is contracted in another state by a person who afterwards removes to the forum state the statute of limitations of the latter state is not suspended until his arrival but runs against the cause of action from the time of its accrual (*McCormick* v. *Blanchard* (1879) 7 Ore. 232; *Snoddy* v. *Cage* (1849) 5 Tex. 106), defendants argue the same rule should prevail in California. ■ It is settled that where, as here, "a rule of law is clearly established by the decisions of the courts of California we are not at liberty to overrule it in favor of one followed in decisions of other states." (*Schneider* v. *Schneider* (1947) 82 Cal.App.2d 860, 862 [187 P.2d 459]; see also *Bekins Moving & Storage Co.* v. *Prudential Ins. Co.* (1985) 176 Cal.App.3d 245, 253 [221 Cal.Rptr. 738].)

■ Defendants next argue that *Dew* v. *Appleberry* (1979) 23 Cal.3d 630 [153 Cal.Rptr. 219, 591 P.2d 509] mandates a literal reading of section 351 and the statute therefore must be interpreted to apply only to a defendant who was a resident of California, left, and later returned. The Supreme Court in *Dew* read section 351 literally in reaching the conclusion that a defendant's amenability to substituted or constructive service does not affect the tolling provisions of section 351 and hence the statute of limitations applicable to plaintiff's tort action was tolled during the period of defendant's absence from the state even though plaintiff could have served defendant despite his absence from California during the statutory period. The *Dew* court did not consider whether section 351 is applicable where a defendant was not a resident of California when the cause of action accrued. A case is not authority for propositions not considered therein. (*People v. Ceballos* (1974) 12 Cal.3d 470, 481 [116 Cal.Rptr. 233, 526 P.2d 241]; *Linvill* v. *Perello* (1987) 189 Cal.App.3d 195, 200 [234 Cal.Rptr. 392].)

■ Defendants further contend that while section 351 was justifiable at the time of its enactment in 1872 because without its tolling provisions plaintiff would have been faced with a choice between foregoing his claim against an absent defendant and pursuing the defendant into another state, such justification no longer exists in light of current laws authorizing extra-territorial service of process. Therefore, defendants argue, section 351 should apply only where a defendant's absence from California deprives plaintiff of a meaningful opportunity to sue the defendant or where the cause of action sued upon has a nexus with California sufficient to justify providing a California forum. This argument is refuted by *Dew* v. *Appleberry, supra,* 23 Cal.3d 630, wherein the court stated: "The Legislature may justifiably have concluded that a defendant's physical absence impedes his availability for suit, and that it would be inequitable to force a claimant to pursue the defendant out of state in order effectively to commence an action within the limitations period. At the same time, by providing alter-

nate forms of service the Legislature simply encourages a plaintiff to adjudicate his claim expeditiously if possibly [*sic*]; by using substituted service a plaintiff may now obtain a binding judgment even in the defendant's absence. While the alternate service provisions may lessen the need for section 351, we do not believe that they repeal section 351 *pro tanto*." (*Id.* at p. 636; fn. omitted.) There is no language in section 351 or in the cases interpreting it which limits its applicability to situations where the plaintiff would be unable to sue defendant at all if not in California or where the cause of action has a nexus with California. These requirements which defendants attempt to graft onto section 351, while perhaps applicable for purposes of forum non conveniens analysis (see *Corrigan* v. *Bjork Shiley Corp.* (1986) 182 Cal.App.3d 166, 173, 178 [227 Cal.Rptr. 247]), are irrelevant in determining the applicability of the tolling provisions of section 351.

■ Defendants next contend that section 351 violates the equal protection clauses of the federal and California Constitutions (U.S. Const., 14th Amend.; Cal. Const., art. I, § 7) because it classifies persons on the basis of residency, depriving nonresidents of the full benefit of the statute of limitations from the time the cause of action accrues. The contention is without merit. Section 351 "does not assume to deprive nonresidents of the benefits of the statute of limitations. What it does is to exclude from computation the time during which any defendant, resident or nonresident, may have been out of the state." (*Foster* v. *Butler* (1913) 164 Cal. 623, 628 [130 P. 6].) " 'Absence from the state is not an unreasonable or arbitrary basis of classification where the statutes of limitation are concerned.' " (*Dew* v. *Appleberry, supra,* 23 Cal.3d 630, 637, fn. 11.) In order to withstand an equal protection challenge, ordinarily a legislative classification need bear only a rational relationship to a conceivable legitimate state purpose. (*In re Marriage of Carpenter* (1986) 188 Cal.App.3d 604, 617 [231 Cal.Rptr. 783].) Section 351 satisfies this requirement inasmuch as it "rationally alleviates any hardship that would result by compelling plaintiff to pursue defendant out of state." (*Dew* v. *Appleberry, supra,* 23 Cal.3d at p. 637; see also *G. D. Searle & Co.* v. *Cohn* (1982) 455 U.S. 404, 412 [71 L.Ed.2d 250, 258, 102 S.Ct. 1137].) Defendants argue California has no legitimate interest in furnishing a forum for a cause of action which arose in a foreign country between citizens of that country. While this factor may be pertinent in determining a claim of forum non conveniens (see *Price* v. *Atchison, T. & S. F. Ry. Co.* (1954) 42 Cal.2d 577, 583-584 [268 P.2d 457, 43 A.L.R.2d 756]), it has no place in an equal protection analysis of section 351. On the equal protection question our Supreme Court has determined that section 351 bears a "rational relation to a valid governmental interest." (*Dew* v. *Appleberry, supra,* 23 Cal.3d at p. 637.) We are bound by that determination.

(*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

■ Defendants' final contention is that section 351 violates the commerce clause of the federal Constitution (art. I, § 8, cl. 3). In support of this contention defendants cite *Bendix Corp.* v. *Midwesco Enterprises* (1988) 486 U.S. 888 [100 L.Ed.2d 896, 108 S.Ct. 2218], wherein it was held that an Ohio law tolling the limitations period as to foreign corporations which do not consent to the general jurisdiction of Ohio courts places an unreasonable burden on interstate commerce in violation of the commerce clause. Said the court: "Although statute of limitations defenses are not a fundamental right [citation], it is obvious that they are an integral part of the legal system and are relied upon to project the liabilities of persons and corporations active in the commercial sphere. The State may not withdraw such defenses on conditions repugnant to the Commerce Clause. Where a state denies ordinary legal defenses or like privileges to out-of-state persons or corporations *engaged in commerce,* the State law will be reviewed under the Commerce Clause to determine whether the denial is discriminatory on its face or an *impermissible burden on commerce.* The State may not condition the exercise of the defense on the waiver or relinquishment of rights that the foreign corporation would otherwise retain. [Citations.] [¶] . . . State interests that are legitimate for equal protection or due process purposes may be insufficient to withstand Commerce Clause scrutiny." (*Bendix Corp.* v. *Midwesco Enterprises, supra,* 486 U.S. 888, 893-894 [100 L.Ed.2d 896, 903-904]; fn. omitted; italics added.) The *Bendix* case does not aid defendants. That acts giving rise to the causes of action herein occurred in Iran while defendants were residents of that country does not affect either interstate commerce or commerce between the United States and Iran, nor does it establish that defendants were engaged in interstate commerce by any definition of that term. (See *Atlanta Motel* v. *United States* (1964) 379 U.S. 241, 253-258 [13 L.Ed.2d 258, 266-269, 85 S.Ct. 348].)

II

PLAINTIFFS' CROSS-APPEAL

■ On their cross-appeal plaintiffs challenge that portion of the order granting new trial which determined that while defendant expressly repudiated the parties' agreement, there was no express nullification of the repudiation. That issue is not before us inasmuch as plaintiffs did not cross-appeal from the new trial order, but from the summary judgment.[6] (Cal. Rules of

---

[6] Plaintiffs purport to cross-appeal also from the order granting motion for summary judgment, a nonappealable order. (*Nystrom* v. *First Nat. Bank of Fresno* (1978) 81 Cal.App.3d 759, 762 [146 Cal.Rptr. 711].)

Court, rule 3(c).)[7] The cross-appeal from the judgment is operative only if the order granting the new trial is reversed thus reinstating the judgment. (*Freeman* v. *LaMorte* (1957) 148 Cal.App.2d 670, 675 [307 P.2d 734].) Because we affirm the order granting new trial, plaintiffs' cross-appeal from the summary judgment becomes moot and must be dismissed. (*Kramer* v. *Gaddis* (1976) 56 Cal.App.3d 837, 843 [128 Cal.Rptr. 860]; *Mehling* v. *Schield* (1967) 253 Cal.App.2d 55, 61 [61 Cal.Rptr. 159]; *Freeman* v. *LaMorte, supra,* 148 Cal.App.2d at p. 675.)

## DISPOSITION

The order granting plaintiffs' motion for new trial is affirmed. Plaintiffs' cross-appeal from the summary judgment is dismissed. Plaintiffs shall recover their costs on appeal.

Johnson, J., and Soven, J.,* concurred.

The petition of defendants and appellants for review by the Supreme Court was denied November 30, 1988.

---

[7] California Rules of Court, rule 3(c) provides in pertinent part: ". . . If a timely notice of appeal is filed from an order granting a motion for a new trial . . . any party other than the appellant, within 20 days after mailing of notification by the superior court clerk of such appeal, may file a notice of appeal from the judgment . . . and on that appeal may present any question which he might have presented on an appeal from the judgment as originally entered . . . ."

* Assigned by the Chairperson of the Judicial Council.