Filed 10/29/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ARROW HIGHWAY STEEL, INC., | B303289 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. EC068969) |
| v. | |
| ROBERT DUBIN, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, John J. Kralik, Judge. Affirmed.

Law Offices of Matthew C. Mickelson and Matthew C. Mickelson for Plaintiff and Appellant.

Alpert Barr & Grant and David M. Almaraz for Defendant and Respondent.

\* \* \* \* \* \*

In *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.* (1988) 486 U.S. 888 (*Bendix*), the United States Supreme Court held that an Ohio statute that tolled the statute of limitations while a defendant is out of state impermissibly burdened interstate commerce and was accordingly unconstitutional. (*Id.* at pp. 891-895.) California has a similar tolling statute—Code of Civil Procedure section 351—that, as relevant here, applies when a defendant "departs from the State" "after [a] cause of action accrues." (Code Civ. Proc., § 351.)[1] In this case, a creditor sued in 2018 to enforce a 1997 judgment against a judgment debtor who departed California in 1998 to start a new business in Nevada. Because this lawsuit is timely only if section 351 applies, this case squarely presents the question: Does section 351 impermissibly burden interstate commerce—and hence violate the so-called "dormant Commerce Clause"—when it is used to toll the statute of limitations against a judgment debtor who moved away from California to engage in commerce after the judgment was entered? We conclude that the answer is "yes." This is the answer most consistent with California case law. The creditor urges us to follow a recent Sixth Circuit case that charts a different path than this California precedent, *Garber v. Menendez* (6th Cir. 2018) 888 F.3d 839 (*Garber*), but we find *Garber* to be unpersuasive. Accordingly, we affirm the trial court's grant of summary judgment to the debtor on the ground that the creditor's lawsuit is time-barred.

---

[1]      All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

# FACTS AND PROCEDURAL BACKGROUND

## I.    Facts

Between 1967 and 1994, Arrow Highway Steel, Inc. (Arrow) hired Robert Dubin (Dubin) to do its bookkeeping and to obtain credit financing for its operations. Both Arrow and Dubin were, during that time, based in California. Dubin obtained Arrow's credit financing from out-of-state lenders, and many of Dubin's other clients were located outside California.

In the early 1990s, Dubin embezzled money from Arrow. For his crimes, Dubin was convicted of bankruptcy fraud in federal court and served time in federal prison between 1995 and 1998, and after a brief period of parole, in 1998 and 1999.

In March 1994, Arrow and its principals—Seymour and Henrietta Albert—sued Dubin and others to recover the money Dubin embezzled from Arrow.[2] On February 27, 1997, Arrow and Dubin entered into a stipulated judgment pursuant to which Dubin agreed to pay Arrow $937,000.

Dubin moved to Nevada after he was released from federal prison (the first time) in 1998. After his final release from prison, Dubin founded a new accounting, bookkeeping and tax business that currently has clients all around the United States and around the world.

At no point since 1997 did Arrow "renew" its judgment against Dubin.

---

[2]    Arrow sued others as well, but they are not relevant to this appeal.

## II. Procedural Background

On July 3, 2018, Arrow filed a complaint seeking to enforce its 1997 judgment against Dubin, along with interest and attorney fees.

Dubin filed a motion for summary judgment on the ground that Arrow's lawsuit was time-barred because section 351, the tolling statute Arrow relies upon to render its action timely, violated the dormant Commerce Clause as applied to Dubin.[3] Following further briefing, and a hearing, the trial court granted summary judgment on the ground that Arrow's lawsuit was time-barred because section 351 was unconstitutional. The court reasoned that the dormant Commerce Clause was, as a threshold matter, implicated in this case because "Dubin [had] . . . engaged in interstate commerce while he performed accounting services for Arrow . . . ." To decide whether section 351 violated the dormant Commerce Clause as applied in this case, the court engaged in a two-part inquiry by (1) "assess[ing] the burden section 351 would impose on interstate commerce under the circumstances," and (2) "determin[ing] whether the burden is counterbalanced by state interests supporting section 351." As to the first part, the court found that section 351 imposed an "unreasonable burden on interstate commerce" because it "force[d]" a "'nonresident individual engaged in interstate commerce'" "'to choose between [abandoning his Nevada business and returning to] California for several years'" in order to run down the limitations period or staying in Nevada to maintain his business but forfeiting his limitations defense and remaining

---

[3] Dubin also argued that Arrow, as a dissolved corporation, lacked standing to enforce the lawsuit. This second ground (which the trial court rejected) is not before us in this appeal.

4

"'subject to suit in California in perpetuity.'" As to the second part, the court found that California's interests did not "outweigh [this] burden" because the justification for tolling lawsuits against out-of-state defendants was largely undermined by "California['s] . . . long-arm statute," which "would permit service on a[n out-of-state] defendant like Dubin." Balancing these factors, the court found that applying section 351 "to this case would impermissibly burden interstate commerce and thereby violate the [dormant] Commerce Clause as applied to Dubin."

Following the entry of judgment, Arrow filed this timely appeal.

## DISCUSSION

Arrow argues that the trial court erred in granting summary judgment for Dubin because, in its view, section 351 does not run afoul of the dormant Commerce Clause on the facts of this case. As a result, Arrow continues, its action against Dubin has been tolled since 1998, and thus its 2018 lawsuit on the 1997 judgment is still timely.

A party in a civil case is entitled to summary judgment if, among other things, he can show that the undisputed facts "establish[] an affirmative defense" "as a matter of law." (§ 437c, subds. (c) & (o)(2).) Thus, summary judgment is appropriate where the undisputed facts establish that a claim is barred by the statute of limitations. (*Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1112; *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 487.) We independently review a trial court's grant of summary judgment. (*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 286.)

California's Enforcement of Judgments Law (§ 680.010 et seq.) grants judgment creditors seeking to extend the

enforceability of a final judgment two options: (1) they can file an application with the court that issued the judgment to renew that judgment for another 10 years (§§ 683.110, 683.120), or (2) they can file an action to enforce the judgment, and as long as that action is timely filed, the creditors are entitled to enforcement (§ 683.050 [authorizing such actions]; *Green v. Zissis* (1992) 5 Cal.App.4th 1219, 1222-1223 (*Green*) [entitlement to relief automatic]; *Trend v. Bell* (1997) 57 Cal.App.4th 1092, 1098 [same]). (See generally *Kertesz v. Ostrovsky* (2004) 115 Cal.App.4th 369, 372-373 (*Kertesz*) [detailing two options]; *Pratali v. Gates* (1992) 4 Cal.App.4th 632, 637-638 (*Pratali*) [same].)

If the judgment creditor pursues the latter option, it must file its action within 10 years of the final entry of judgment or its last renewal of judgment, whichever comes later. (§§ 337.5, subd. (b) [setting 10-year limitations period for such actions], 683.220 [renewal extends time for such actions].) Section 351 is an exception to all statutes of limitations in California, including this one. It provides:

> "[1] If, when the cause of action accrues against a person, he is out of the State, the action may be commenced within the term herein limited, after his return to the State, and [2] if, after the cause of action accrues, he departs from the State, the time of his absence is not part of the time limited for the commencement of the action."

(§ 351.) As the bracketed numbers indicate, section 351 tolls the limitations period in two different situations—namely, (1) when the defendant is outside California at the moment the plaintiff's cause of action accrues, and (2) when the defendant is present in

California at the moment the cause of action accrues, but he subsequently "departs" the state. (*Kohan v. Cohan* (1988) 204 Cal.App.3d 915, 920 (*Kohan*).) This second clause applies whether the departure is temporary (*Green, supra*, 5 Cal.App.4th at p. 1223) or permanent (*Heritage Marketing & Ins. Services, Inc. v. Chrustawka* (2008) 160 Cal.App.4th 754, 761 (*Heritage*)).

In this case, Arrow's stipulated judgment against Dubin was finally entered on the day it was signed—February 27, 1997. (See *Cadle Co. II, Inc. v. Sundance Financial, Inc.* (2007) 154 Cal.App.4th 622, 624 [generally, "[a] stipulated judgment . . . becomes final when entered"].) As a consequence, Arrow had 10 years—until February 27, 2007—to bring its enforcement action. Arrow did not do so until July 3, 2018. The only way that Arrow's enforcement action is timely is if section 351 applies, which occurs only if it withstands the dormant Commerce Clause challenge leveled by Dubin. The constitutionality of a statute is a question of law we independently review. (*In re Taylor* (2015) 60 Cal.4th 1019, 1035.)

## I.  The Law of the Dormant Commerce Clause

### A.  *Generally*

The Commerce Clause of the United States Constitution grants Congress the power "[t]o regulate Commerce . . . among the several States." (U.S. Const., art. I, § 8, cl. 3.) By entrusting *Congress* with this power, the clause implies that the *states* lack that power. (*McBurney v. Young* (2013) 569 U.S. 221, 235 (*McBurney*) ["the Court has long inferred that the Commerce Clause itself imposes certain implicit limitations on state power"]; *Dep't of Revenue v. Davis* (2008) 553 U.S. 328, 337 (*Davis*) [same]; see also *Pac. Merch. Shipping Ass'n. v. Goldstene* (9th Cir. 2011) 639 F.3d 1154, 1177 (*Pacific Merchant*) ["the

7

whole objective of the dormant Commerce Clause doctrine is to protect Congress's latent authority from state encroachment"].) This "negative implication" of the clause is commonly referred to as the "dormant Commerce Clause." (*Davis*, at pp. 337-338.) In defining the contours of the dormant Commerce Clause, the courts have sought to preclude states from engaging in "economic protectionism" (that is, from adopting laws "designed to benefit in-state economic interests by burdening out-of-state competitors") while at the same time allowing the states to retain one of the chief attributes reserved to them as members of our federalist system of government (that is, the ability to operate as semi-autonomous laboratories able to experiment and innovate in regulating their own affairs and economies). (*New Energy Co. v. Limbach* (1988) 486 U.S. 269, 273-274; *Davis*, at p. 337-338; *Ariz. State Legis. v. Ariz. Indep. Redistricting Comm'n* (2015) 576 U.S. 787, 817 ["'recogniz[ing] the role of the States as laboratories for devising solutions to difficult legal problems' [citation]"].)

In assessing whether a state law violates the dormant Commerce Clause, courts are to ask two questions: (1) Does the state law "discriminate[] against interstate commerce," and if not, (2) Does the state law nevertheless incidentally burden interstate commerce? (*Davis*, *supra*, 553 U.S. at p. 338; *McBurney*, *supra*, 569 U.S. at p. 235.) A state law discriminates against interstate commerce if its purpose or "'practical effect'" is to discriminate against interstate commerce by giving local interests or residents a leg up on out-of-state interests or residents. (*Maine v. Taylor* (1986) 477 U.S. 131, 138 (*Maine*); *Pacific Merchant*, *supra*, 639 F.3d at p. 1178.) Such a discriminatory state law is valid only if it "'advances a legitimate local purpose that cannot be adequately served by reasonable

nondiscriminatory alternatives.'" (*Or. Waste Sys., Inc. v. Dep't of Envtl. Quality* (1994) 511 U.S. 93, 100-101 (*Oregon Waste*).)  A state law that "'regulates evenhandedly'" but nevertheless has "'"incidental effects" on interstate commerce'" is valid as long as its burden on interstate commerce is not "'clearly excessive in relation to [its] putative local benefits.'"  (*Oregon Waste*, at p. 99; *Pike v. Bruce Church* (1970) 397 U.S. 137, 142.)

### B.     *The Bendix case*

State laws that toll the statute of limitations on civil actions for out-of-state defendants (but not in-state defendants) are not uncommon.  The leading case examining whether they run afoul of the dormant Commerce Clause is *Bendix*, *supra*, 486 U.S. 888.

*Bendix* examined an Ohio law that tolled the statute of limitations for any person or corporation not "present" in the state.  (*Bendix*, *supra*, 486 U.S. at p. 889.)  In that case, a Delaware corporation sued an Illinois corporation in Ohio and sought to avoid the applicable four-year statute of limitations by invoking the Ohio tolling law on the ground that the Illinois corporation was not present in Ohio because it had not appointed an agent for service of process in Ohio.  (*Id.* at pp. 889-890.)  As a threshold matter, *Bendix* held that review under the dormant Commerce Clause is warranted if a state "denies ordinary legal defenses or like privileges to out-of-state persons or corporations engaged in commerce."  (*Id.* at p. 893.)  This threshold was satisfied because Ohio's statute denied the Illinois corporation the right to rely on the statute of limitations defense due to its out-of-state status.

"[C]hoos[ing]" to treat the Ohio law as a nondiscriminatory state law that incidentally burdened interstate commerce, *Bendix*

examined (1) "[t]he burden the tolling statute places on interstate commerce," and (2) the state's "putative interests" supporting the law. (*Bendix, supra,* 486 U.S. at pp. 891-892.) *Bendix* found that the tolling law placed a "significant" burden on interstate commerce because it "forces" an out-of-state "corporation to choose between exposure to the general jurisdiction of Ohio courts" (by effectively becoming an Ohio resident by designating an agent for service of process), on the one hand, and "forfeiture of the limitations defense[ and] remaining subject to suit in Ohio in perpetuity" (by remaining out of state), on the other hand. (*Id.* at p. 893.) At the same time, Ohio's putative interest in the tolling law was weak: The law was meant to "protect[]" Ohio "residents from corporations who become liable for acts done within the State but later withdraw from the jurisdiction," but this interest was not appreciably advanced by the tolling law because a very similar protection was already provided by Ohio's "long-arm statute," which "would have permitted service" on the Illinois corporation "throughout the period of limitations." (*Id.* at p. 894.) *Bendix* consequently held that "the burden imposed on interstate commerce by the tolling statute exceed[ed] any local interest that the State might advance." (*Id.* at p. 891.)

### C. *Analytical framework*

In light of the general law governing the dormant Commerce Clause, and the specific application of that law to tolling statutes aimed at out-of-state defendants in *Bendix,* analyzing whether section 351 violates that clause is a three-step process. First, the court must determine whether the defendant—here, Dubin—was engaged in interstate commerce. If not, then section 351 does not satisfy *Bendix*'s threshold requirement that the state law "den[y]" an "ordinary legal

10

defense[] or like privilege[]" to an "out-of-state person[] or corporation[] *engaged in commerce*." (*Bendix, supra*, 486 U.S. at p. 893, italics added.) Second, and if Dubin was engaged in interstate commerce, then the court must determine whether section 351 discriminates against interstate commerce—either by purpose or in practical effect. (*Davis, supra*, 553 U.S. at p. 338; *Maine, supra*, 477 U.S. at p. 138.) Third, and if Dubin was engaged in interstate commerce but section 351 does not discriminate against interstate commerce, then the court must determine whether the burdens that tolling under section 351 places on interstate commerce are "'clearly excessive'" in relation to the statute's "'putative local benefits.'" (*Oregon Waste, supra*, 511 U.S. at p. 99; *Bendix*, at pp. 891-892.)

## II. Analysis

### A. *Was Dubin engaged in interstate commerce?*

In setting forth its threshold requirement that the out-of-state defendant be "engaged in [interstate] commerce," *Bendix* did not specify whether the defendant had to be so engaged at the time of the underlying transaction giving rise to the lawsuit or, instead, at some point thereafter. (*Bendix, supra*, 486 U.S. at p. 893.) Most of the cases examining section 351 have looked solely to whether the out-of-state defendant was engaged in interstate commerce *at the time of the underlying transaction*. (E.g., *Dan Clark Family Limited Partnership v. Miramontes* (2011) 193 Cal.App.4th 219, 232 (*Dan Clark*) [examining whether underlying transaction sought to be tolled was an "interstate commercial transaction"]; *Abramson v. Brownstein* (9th Cir. 1990) 897 F.2d 389, 392 [same]; cf. *Kohan, supra*, 204 Cal.App.3d at p. 924 [same, but concluding that transaction occurring in Iran did not involve interstate commerce]; *Pratali, supra*, 4

11

Cal.App.4th at p. 643 [same, but concluding that a "single amicable loan" transaction between two California residents did not involve interstate commerce]; *Mounts v. Uyeda* (1991) 227 Cal.App.3d 111, 122 [same, but concluding that underlying automobile altercation involving two California residents as private parties did not involve interstate commerce].)  We need not decide whether the time of the underlying transaction should be the *sole* focus because it is undisputed in this case that Dubin was involved in interstate commerce *both* at the time he embezzled money from Arrow (which is what gave rise to the stipulated judgment in this case) *and* currently, in his interstate and international accounting, bookkeeping and tax practice.

Thus, the answer to this first question is "yes."

**B.    *Does section 351 discriminate against interstate commerce in purpose or practical effect?***

Section 351 does not discriminate against interstate commerce by treating local interests or residents more favorably than out-of-state interests or residents.  (*Maine*, *supra*, 477 U.S. at 138.)  Section 351 is not facially discriminatory because it "makes no distinction between residents and nonresidents for purposes of tolling."  (*Pratali*, *supra*, 4 Cal.App.4th at p. 641; *Dan Clark*, *supra*, 193 Cal.App.4th at p. 232, fn.9.)  Section 351 also does not have a discriminatory purpose because, as originally enacted in 1872, its purpose was to stop the statute of limitations from running against out-of-state defendants who were otherwise not amenable to service of process (*Dew v. Appleberry* (1979) 23 Cal.3d 630, 634 (*Dew*)), and not for some broader economic protectionist purpose.  And section 351 does not have the "practical effect" of treating local interests or residents more favorably.  Section 351's tolling provisions may be invoked by plaintiffs regardless of their residency, and it applies against

12

defendants regardless of their residency or at what point in time they left the State of California. Although, as a practical matter, section 351 will by definition be applied only against entities who are out of state during the period of tolling, this reality does not equate to a discriminatory effect because the statute nevertheless "regulate[s] evenhandedly . . . without regard to whether the [parties to the lawsuit or the underlying transaction giving rise to the lawsuit came] from outside the State." (*CTS Corp. v. Dynamics Corp. of Am.* (1987) 481 U.S. 69, 88; *Minn. v. Clover Leaf Creamery Co.* (1981) 449 U.S. 456, 471-472; accord, *Garber*, *supra*, 888 F.3d at p. 843 [so holding, as to a similar tolling statute].)

Thus, the answer to this second question is "no."

**C.** ***Does section 351 place burdens on interstate commerce that are clearly excessive in relation to its putative local benefits?***

Like the state tolling law at issue in *Bendix*, section 351 places a "significant" burden on interstate commerce because it "force[s] defendants . . . to choose between remaining in [or returning to] California until the limitations period expire[s], or [remaining outside of California but] forfeiting the limitations defense and [thereby] remaining 'subject to suit in California in perpetuity.'" (*Dan Clark*, *supra*, 193 Cal.App.4th at p. 233; *Heritage*, *supra*, 160 Cal.App.4th at p. 764; *Abramson*, *supra*, 897 F.2d at p. 392 [for these reasons, "[s]ection 351 imposes a significant burden"].) This significantly burdens interstate commerce if the defendant who is forced to make this choice has "travel[ed]" out of state to "facilitat[e] . . . interstate commerce" because, in that situation, section 351 creates the incentive for the out-of-state defendant—and his commercial activity—to remain in state rather than out of state. (*Filet Menu, Inc. v.*

13

*Cheng* (1999) 71 Cal.App.4th 1276, 1283-1284 (*Filet Menu*); *Heritage*, at p. 760.)[4]  This is certainly the case here, where Dubin has set up an entire new interstate—and international—business in Nevada.

And like the putative state interest underlying the Ohio tolling law in *Bendix*, the putative state interest advanced by section 351 is weak.  Like the law at issue in *Bendix*, section 351 was initially designed to prevent defendants who left the state—and thereby became beyond the reach of process—from escaping liability altogether.  (*Dew*, *supra*, 23 Cal.3d at pp. 636-637.)  Like the law at issue in *Bendix*, the advent of long-arm statutes and their validity as a matter of due process (see *Int'l Shoe Co. v. Wash.* (1945) 326 U.S. 310, 316) mean that out-of-state defendants are now subject to process, such that section 351's original function is largely a quaint relic of the bygone era.  To be

---

[4]    Because this incentive itself creates a significant burden on interstate commerce, we need not decide whether the disincentive that section 351 places on *any* "travel across state lines"—whether or not commerce-related—also constitutes a significant burden.  The California courts appear to be split on this point.  (Compare *Filet Menu*, at pp. 1283-1284 [section 351 burdens interstate commerce only when the out-of-state "travel [is] for the facilitation of interstate commerce"] with *Heritage*, at p. 764 [suggesting that "creating disincentives to travel across state lines . . . limits the exercise of the right to freedom of movement"].)  Although courts have generally concluded that section 351 does not violate the federal right to interstate travel (*Dew*, *supra*, 23 Cal.3d at pp. 636-637), this conclusion appears to be analytically distinct from whether the incentives section 351 creates regarding whether to travel to conduct one's business significantly burden interstate commerce under the federal dormant Commerce Clause.

sure, section 351 is not entirely purposeless these days: By tolling the statute of limitations for out-of-state defendants, section 351 "ease[s] the burden—however small—of locating and serving out-of-state defendants" by stopping the clock. (*Dew*, at pp. 636-637; *Pratali*, *supra*, 4 Cal.App.4th at pp. 641-642.) Although this residual function may be sufficiently rational to withstand equal protection scrutiny (*Dew*, at pp. 636-637), *Bendix* and all of the cases applying *Bendix* to section 351 make clear that this function is too weak to justify the "excessive burden" that section 351 otherwise places on interstate commerce. (*Heritage*, *supra*, 160 Cal.App.4th at p. 763 [""'[T]he state's interest in aiding its residents' efforts to litigate against non-resident defendants d[oes] not justify denying non-residents the protections of the statute of limitations, particularly when long-arm service of process [is] available[]" [citation]'"]; *Dan Clark*, *supra*, 193 Cal.App.4th at pp. 233-234 [same]; *Filet Menu*, *supra*, 71 Cal.App.4th at p. 1283 [same]; *Abramson*, *supra*, 897 F.2d at p. 393 ["Because th[e state's interest] did not support the corresponding burden created by the Ohio tolling statute in *Bendix*, it also cannot support the burden created by [section] 351"].)

Thus, the answer to the third question is "yes," and section 351 violates the dormant Commerce Clause as applied to a defendant who moved out of state to operate a business engaged in interstate commerce.

## II. Arrow's Arguments

Arrow proffers three main reasons why the analysis set forth above is incorrect: (1) that analysis is out of step with the Sixth Circuit's recent decision in *Garber*, *supra*, 888 F.3d 839, (2) that analysis is different—and comes out in Arrow's favor—when

15

section 351 is used to toll an action to enforce a judgment, and (3) section 351 still serves a rational purpose.

### A.   *Garber*

In 2018, the Sixth Circuit held that the Ohio tolling law found to violate the dormant Commerce Clause in *Bendix* did *not* run afoul of it as applied to an Ohio resident who moved out of state to retire before being sued.  (*Garber*, *supra*, 888 F.3d at pp. 840, 844-845.)  Like *Bendix*, *Garber* recognized that Ohio's tolling law put defendants to a choice—stay in Ohio and run down the statute of limitations clock, or move away and remain subject to suit indefinitely.  (*Garber*, at p. 844.)  But *Garber* viewed this forced choice as being no different from a myriad of other state laws that "provide benefits to residents that the residents put in jeopardy if they move" out of state.  (*Ibid.*)  What is more, *Garber* regarded such state laws—that is, laws aimed at "attract[ing] and retain[ing] residents through policy choices"—as being "a healthy byproduct of the laboratories of democracy in our federalism-based system of government, not a sign of unconstitutional protectionism."  (*Ibid.*)  For support, *Garber* drew upon *McBurney*, *supra*, 569 U.S. 221.  *McBurney* held that a Virginia law that made all public records "'open to inspection and copying'" to Virginia residents (but not to nonresidents) did not violate the dormant Commerce Clause because it "merely provide[d] a service to local citizens that would not otherwise be available *at all*"; because Virginia itself had "created" the "'market' for public documents in Virginia," *McBurney* held, its law restricting access to in-state residents did not "'interfere[] with the natural functioning of the interstate market.'" (*McBurney*, at pp. 223, 235, italics added.)  *Garber* read *McBurney* as declaring that there is no dormant Commerce

16

Clause defect with state laws that "discourage[] [in-state residents] from moving to other States because they would lose" a benefit. (*Garber*, at p. 844.) *Garber* went on to assume that the Ohio tolling law might violate the dormant Commerce Clause if the defendant had introduced "proof of real burdens" imposed by the law (*id.* at p. 845), but found that the defendant in that case had not done so. *Garber* distinguished *Bendix* on the ground that the tolling law, when applied to a defendant who had once been a resident of Ohio, "merely creates a benefit for residents of Ohio." (*Id.* at p. 846.)

Were the slate blank, we may well agree with *Garber's* analysis. But the slate is anything but blank.

As Arrow itself recognizes, *Garber* is inconsistent with how the California courts have applied the dormant Commerce Clause to section 351. If, as *Garber* suggests, tolling laws are valid when applied to in-state residents who move out of state, then *Heritage*—which also involved a defendant who moved out of state but concluded that section 351 was constitutionally invalid—was wrongly decided. (*Heritage, supra*, 160 Cal.App.4th at pp. 757-758.) What is more, subsequent cases have cited *Heritage* with approval. (E.g., *Dan Clark, supra*, 193 Cal.App.4th at pp. 230, 233.) "Where out-of-state authority is at odds with California law, it lacks even persuasive value," particularly when that authority is a lone voice in the woods. (*Lucent Technologies, Inc. v. Board of Equalization* (2015) 241 Cal.App.4th 19, 35, citing *Fairbanks v. Superior Court* (2009) 46 Cal.4th 56, 63; cf. *Etcheverry v. Tri-Ag Service, Inc.* (2000) 22 Cal.4th 316, 321 [noting that the decisions of lower federal courts "on a federal question" are particularly persuasive where they are "'both numerous and consistent'"].)

17

What is more, *Garber* appears to be in tension—if not downright inconsistent—with *Bendix* itself. As explained above, *Bendix* concluded that the very same Ohio tolling law imposed a "significant" burden on interstate commerce by "forc[ing]" a defendant who is out of the state after a lawsuit is filed "to choose between" moving back to Ohio (in order to run down the statute of limitations clock) or to remain out of state (and thus remain subject to suit "in perpetuity" and thereby lose the statute of limitations defense). (*Bendix, supra,* 486 U.S. at p. 893.) That choice—and its resulting burden on interstate commerce by providing an incentive for the commerce-engaged defendant to re-locate to Ohio—remains the same whether or not that defendant *started out* as an Ohio resident. *Garber*'s attempt to distinguish *Bendix* on this ground is, for that reason, unpersuasive. Further, *Garber*'s chief rationale appears to conflate two separate strands of dormant Commerce Clause analysis. *Garber* analogizes the Ohio tolling law to state laws that deny benefits to residents who leave a state and finds them constitutionally valid because such laws are "not a sign of unconstitutional protectionism" (*Garber, supra,* 888 F.3d at p. 844), but the dormant Commerce Clause inquiries into a discriminatory purpose on the one hand, and into an excessive burden on interstate commerce on the other, are distinct. (*Davis, supra,* 553 U.S. at pp. 338-339.) *Garber*'s conclusion that the Ohio tolling law, as a state law denying benefits to residents who move away, has no discriminatory purpose does not undermine *Bendix*'s wholly independent holding that the very same law imposes an unconstitutionally excessive burden on interstate commerce. Nor does *McBurney* cast any doubt (or, for that matter, any shade) on *Bendix* because, as *McBurney* itself acknowledged, it involved a public records access

18

law that *created* a wholly new market but limited access to that market, whereas the tolling law at issue in *Bendix* created an excessive burden on the already existing interstate commerce marketplace.

Because we conclude that *Garber* is inconsistent with California law and with *Bendix* itself, we decline to follow it.

**B.** *Actions to enforce judgments*

By its plain text, section 351's tolling rule applies to *all* out-of-state defendants, regardless of the nature of the plaintiff's claim against them. (§ 351.) Arrow argues that the nature of the claim alters the dormant Commerce Clause inquiry into whether section 351 imposes an excessive burden on interstate commerce, at least when the plaintiff is seeking to enforce a judgment. As noted above, section 351 imposes an excessive burden on interstate commerce because it forces out-of-state defendants (who are otherwise engaged in interstate commerce) to decide between returning to California (to run down the statute of limitations clock) or to remain outside of California (but be subject to tolling—and hence suit—indefinitely). (*Dan Clark*, *supra*, 193 Cal.App.4th at p. 233; *Heritage, supra*, 160 Cal.App.4th at p. 764; *Abramson, supra*, 897 F.2d at p. 392.) Arrow argues that the out-of-state defendant's decisional calculus is different when the plaintiff is bringing a claim to enforce a judgment because California law makes judgments "endlessly and effortlessly renewable." As a result, Arrow continues, an out-of-state defendant in such case gains no advantage from returning to California (because the statute of limitations clock is irrelevant in light of the power of the plaintiff to renew the judgment). Because section 351 in this situation creates no

19

incentive to return to California, Arrow concludes, it does not excessively burden interstate commerce.

Arrow's argument takes an impermissible "alternate timeline" approach to constitutional analysis. As noted above, Arrow is correct that judgment creditors have the statutory right to renew their judgments if they do so within 10 years. (§§ 683.110, 683.120.) But renewing a judgment is an "*alternative*" to suing to enforce a judgment. (*Pratali, supra,* 4 Cal.App.4th at pp. 637-638; *Kertesz, supra,* 115 Cal.App.4th at p. 373.) Indeed, the decision to pursue the latter indicates a decision *not* to pursue the former. More to the point, it is undisputed that Arrow chose *not* to renew the judgment and to sue to enforce the judgment. Because Arrow waited 21 years to take any action, it is now too late for Arrow to renew its judgment. Dubin consequently faces the same incentives under section 351 as any other out-of-state defendant facing suit in California: Return to California to run down the applicable limitations period (here, 10 years in actions to enforce a judgment), or remain out-of-state but subject to indefinite tolling under section 351. Because the dormant Commerce Clause analysis in this case turns on what actions Arrow actually took— rather than what actions Arrow might have taken—the fact that the judgment against Dubin might have been subject to infinite renewals in an alternate timeline is irrelevant.

C.    *Rationality of section 351*

Although our Supreme Court has upheld section 351 against equal protection challenges as continuing to serve a legitimate and rational state objective (*Dew, supra,* 23 Cal.3d at pp. 636-637; see also *G.D. Searle & Co. v. Cohn* (1982) 455 U.S. 404, 405-410 [upholding a similar New Jersey tolling statute on

20

equal protection grounds]), this finding says nothing about section 351's validity—or, more to the point, invalidity—under the dormant Commerce Clause as applied to the facts of this case. (*Bendix, supra,* 486 U.S. at pp. 893-894 ["[S]tate interests that are legitimate for equal protection or due process purposes may be insufficient to withstand Commerce Clause scrutiny"].)

## DISPOSITION

The judgment of dismissal is affirmed. Dubin is entitled to his costs on appeal.

**CERTIFIED FOR PUBLICATION.**


_____, J.
HOFFSTADT

We concur:


_____, Acting P.J.
ASHMANN-GERST


_____, J.
CHAVEZ